# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2009

Charles R. Fulbruge III
Clerk

No. 08-31196

WORLD WIDE STREET PREACHERS FELLOWSHIP; KENNETH COLEMAN, SR.,

Plaintiffs - Appellants

v.

TOWN OF COLUMBIA,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before JONES, Chief Judge, and SMITH and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Officer Robert Miles of the Columbia Police Department violated the First Amendment rights of World Wide Street Preachers Fellowship members and Kenneth Coleman, Sr. on February 12, 2005. The question before us on appeal is whether the Town of Columbia may be held liable under 42 U.S.C. § 1983 for the actions of its officer. Following a bench trial, the district court determined that Columbia was not liable for the constitutional deprivation because World Wide Street Preachers Fellowship and Coleman failed to prove that a Columbia policy or custom caused the constitutional injury. For the following reasons, we affirm.

I.

The facts as found by the district court are as follows: World Wide Street Preachers Fellowship ("WWSPF") is an organization of street preachers who demonstrate along roadways while carrying signs reflective of their religious beliefs, including their belief that abortion is a sin. Some of their signs are textual; however, others display pictures of aborted fetuses. Appellant Kenneth Coleman, Sr. and Allen Russell are street preachers and are members of WWSPF.

The preachers began demonstrating in Columbia, Louisiana in December 2003 at the intersection of U.S. Highway 165 and Church Street. They preferred this intersection because they could preach and display their signs to passing motorists, who were forced to slow down or stop for a traffic signal at the intersection. The preachers demonstrated at this intersection at least eleven times between December 2003 and April 2005, usually without police interruption.

On February 12, 2005, the preachers demonstrated at the southeast corner of the intersection in front of the First United Methodist Church ("FUMC"), apparently because the southwest corner of the intersection where they had demonstrated before was under construction. During the demonstration, the preachers stood on the shoulder of the state highway and FUMC's property.

While the preachers were demonstrating, off duty State Trooper John Wyles observed the preachers standing on the shoulder of the highway. Trooper Wyles contacted the Caldwell Parish Sheriff's Department and requested that an officer move the preachers off the roadway.[1] He was concerned that the preachers' location created a safety issue because northbound traffic would be distracted by the demonstration, which was approximately 30 feet south of the

---

[1] Columbia does not have its own dispatcher and is within Caldwell Parish.

traffic light. The Columbia Police Department also received complaints from FUMC about the preachers.

Because of the calls from Wyles and FUMC, Officers Robert Miles and Michael Etheridge of the Columbia Police Department were dispatched. Upon arrival, the officers informed the demonstrators that they needed to leave the intersection. The officers then left to attend another call.

When the officers later returned, the preachers were demonstrating on FUMC's property. Miles informed Russell that the preachers were on church property, but he disagreed. Miles then pointed to the area adjacent to the shoulder and stated that "this is church property and they don't want you here." He then pointed to the shoulder and stated "this is state property and they don't want you here." He threatened Russell with arrest if he refused to leave the intersection. Russell refused and was arrested.[2] Miles then threatened the remaining preachers with arrest and said, "You cannot picket, boycott, on state property or right of way."

At the time of the arrest, Miles believed Russell was in violation of Louisiana Revised Statute § 14:108 for resisting an officer. After reviewing the Louisiana criminal statutes, Miles concluded that Russell also violated Louisiana Revised Statutes § 32:143 (standing within twenty feet of a traffic control signal) and § 14:326 (demonstrating without a permit). Russell was charged with violating the three statutes and was jailed over the weekend.

Thereafter, WWSPF and Coleman filed suit against Columbia under 42 U.S.C. § 1983 complaining that Columbia was liable for the infringement of the preachers' right to free speech, free exercise of religion, and freedom of assembly.

---

[2] In a previous appeal by WWSPF, we determined that Miles's arrest of Russell could not cause a First Amendment injury to WWSPF because WWSPF as an organization lacks standing to seek relief for injuries to a single member. *World Wide St. Preachers Fellowship v. Town of Columbia*, 245 F. App'x 336, at *5 n.5 (5th Cir. Jun. 6, 2007).

They sought an injunction prohibiting Columbia from limiting the preachers' rights and nominal damages. The preachers continued to demonstrate at the intersection after filing suit.

Following discovery, Columbia moved for summary judgment arguing that the uncontested evidence demonstrated that Officer Miles did not violate the preachers' rights and in the alternative, because no Columbia policy or custom caused the alleged deprivation of rights, Columbia could not be held liable for the deprivation. The district court determined that an issue of fact remained as to whether Miles violated the preachers' rights. Further, an issue of fact remained as to whether Columbia had a practice or custom of violating the preachers' rights that was so widespread or well settled as to constitute custom. The district court did, however, hold that the preachers failed to establish municipal liability on the basis of an alleged failure to train.

A bench trial ensued and the district court found in favor of Columbia. Specifically, the district court found that Officer Miles was motivated not by the content of the preachers' message but by Trooper Wyles's request and the complaints by FUMC. Nonetheless, the district court found that Miles violated the preachers' rights on February 12, 2005, because Miles's restriction on the preachers' rights was not narrowly tailored to serve a significant government interest and did not leave open alternative channels of communication. Although Miles violated the preachers' rights, the court found that the preachers failed to prove that Columbia could be held liable for the violation. The preachers appealed.

## II.

In reviewing a bench trial, we review the district court's legal determinations de novo and its factual findings for clear error. *Flint Hills Res. LP v. Jag Energy, Inc.*, 559 F.3d 373, 375 (5th Cir. 2009). We may only find clear error if:

> (1) the findings are without substantial evidence to support them, (2) the court misapprehended the effect of the evidence, and (3) although there is evidence which if credible would be substantial, the force and effect of the testimony, considered as a whole, convinces the court that the findings are so against the preponderance of credible testimony that they do not reflect or represent the truth and right of the case.

*S.E.C. v. Gann*, 565 F.3d 932, 936 (5th Cir. 2009) (quoting *Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006)). Under this framework, we review the decision of the district court.

### III.

Title 42 U.S.C. § 1983 provides a vehicle by which a plaintiff may seek redress for constitutional injuries. It is uncontested on appeal that Officer Miles violated the preachers' First Amendment rights on February 12, 2005, when he threatened the preachers with arrest if they did not end their demonstration and disperse. Notwithstanding, to prevail against a municipality under § 1983, a plaintiff must show that the municipality's policy or custom caused the constitutional deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Sanders-Burns v. City of Plano*, 578 F.3d 279, 290 (5th Cir. 2009).[3]

---

[3] We granted The National Legal Foundation's motion to file a brief as amicus curiae in this case. In its brief, The National Legal Foundation argued that a plaintiff need not establish a municipal policy or custom to obtain declaratory or injunctive relief against a municipality. As noted in the amicus brief, this argument was not raised in the appellants' brief. It is well-settled in this circuit that "an amicus curiae generally cannot expand the scope of an appeal to implicate issues that have not been presented by the parties to the appeal." *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urban Dev.*, 980 F.2d 1043, 1049 (5th Cir. 1993); *see also Garcia-Melendez v. Ashcroft*, 351 F.3d 657, 663 n.2 (5th Cir. 2003). Accordingly, we will not consider the arguments raised only by the amicus curiae. However, we note that the First, Second, Fourth, Seventh, and Eleventh Circuits have all held that *Monell v. Department of Social Services* requires a plaintiff to establish a municipal policy or custom to obtain relief against a municipality, whether that relief is monetary, declaratory, or injunctive. *See Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) (holding that *Monell*'s requirement applies even when a party seeks only prospective relief); *Dirrane v. Errokline Police Dep't*, 315 F.3d 65, 71 (1st Cir. 2002) (same); *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001) (same); *Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 n.6 (4th Cir. 1995) (same); *Bannum, Inc. v. City*

No liability exists under the doctrine of *respondeat superior* in § 1983 actions. *Sanders-Burns*, 578 F.3d at 290. Thus, to prevail against Columbia, a municipality, the preachers must demonstrate: (1) Columbia had a policy or custom, of which (2) a Columbia policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is Columbia's policy or custom. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

Here, the preachers articulate three bases by which to suggest that Columbia had a policy or custom of violating the preachers' rights: 1) Columbia had a custom or practice of violating the preachers' rights by applying inapplicable statutes to limit the preachers' rights to demonstrate because of the graphic nature of their signs; 2) Columbia ratified Officer Miles's decision to violate the preachers' rights; and 3) Columbia had a policy of failing to adequately train its police officers on the rights of protesters. We will consider each of these alleged bases.

## A.

First, the preachers argue that Columbia had a custom or practice of violating the preachers' rights by applying inapplicable statutes to limit their rights to demonstrate because of the graphic nature of their signs. One way plaintiffs may prove *Monell*'s municipal policy or custom requirement is to show a "persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Pineda*, 291 F.3d at 328 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841

---

*of Fort Lauderdale*, 901 F.2d 989, 997 (11th Cir. 1990) (same). Only the Ninth Circuit has held to the contrary and that holding has been called into doubt. *Chaloux v. Killeen*, 886 F.2d 247, 251 (9th Cir. 1989) (holding that a plaintiff need not establish a policy or custom to obtain prospective relief); *see Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1477 (9th Cir. 1993) (Fletcher, J., concurring) (observing that *Chaloux* "is in conflict with *Monell*.").

(5th Cir. 1984) (en banc)). In its Rule 52 findings of fact and conclusions of law, the district court rejected the preachers' theory and found that Columbia did not have a widespread practice of restricting the preachers' rights by applying inapplicable statutes. The preachers aver that finding is clearly erroneous.

On appeal, no party contests that on February 12, 2005, Russell was arrested and charged on the basis of three inapplicable statutes—Louisiana Revised Statutes § 14:108 for resisting an officer;[4] § 32:143 for standing within twenty feet of a traffic control signal;[5] and § 14:326 for demonstrating without a permit.[6]  One incident of applying inapplicable statutes to the preachers is, however, insufficient to demonstrate a custom. *Id.* at 329. Again, the preachers must show a "persistent and widespread practice." *See id.*

Thus, to support its position that Columbia had a persistent, widespread practice of violating the preachers' rights by applying inapplicable statutes to limit the preachers' right to demonstrate because of the graphic nature of their signs, the preachers point to the following evidence: In December 2003, while the preachers were demonstrating, Chief of Police Doug Crockett told Russell that he did not mind the preachers' protest but asked that they put their signs away.

---

[4] Section 14:108 "provides that it is an offense to intentionally interfere with an officer making a lawful arrest, seizing property, or serving process." *World Wide St. Preachers*, 245 F. App'x 336, at *7; *see* LA. REV. STAT. ANN. § 14:108 (2004). We previously determined that because the preachers were not interfering with an arrest, seizure or property, or service of process, the resisting statute was not applicable to the preachers' actions. *Id.*

[5] Section 32:143 provides in pertinent part: "No person shall stand . . . in any of the following places: . . . (7) [w]ithin twenty feet upon the approach to any flashing beacon stop sign, or traffic control signal located at the side of a roadway . . . ." LA. REV. STAT. ANN. § 32:143 (2002). As we determined previously, "stand" is defined as temporally halting a vehicle and is inapplicable to human beings who are standing in these areas. *World Wide St. Preachers*, 245 F. App'x 336, at *7.

[6] Section 14:326 requires groups within parishes with populations of at least 450,000 to obtain a permit before staging a parade, march, or demonstration. *Id.*; *see* LA. REV. STAT. ANN. § 14:326 (2004). We determined that the permit statute did not apply to the preachers because Caldwell Parish, in which Columbia is located, did not meet the population requirement. *Id.*

Russell declined and told Crockett that they would continue to demonstrate with their signs until Crockett showed him a law rendering their activities illegal. Crockett left, and the preachers continued to demonstrate. On another occasion in December Officer Miles asked if the preachers had to hold up the pictures of aborted fetuses. He stated that he did not agree with the pictures and that they were offensive, but he allowed the preachers to continue their demonstration.

Six days after the February 12 incident, the preachers' attorney overnighted a letter to Chief Crockett explaining that the actions of Columbia's officers violated the preachers' rights. James Carroll, whose law firm represented Columbia, responded to the preachers' letter stating that the officers acted within the law for several reasons including the fact that the preachers were too close to the intersection. He also wrongly informed the preachers that they must acquire a permit to demonstrate on state property. Columbia has no policies regarding public demonstrations, the display of signs, assembly in public areas, or street preachers. No group or individual is required to obtain a permit merely to demonstrate in Columbia. The preachers argue that the letter demonstrates Columbia's policy of applying the inapplicable Louisiana Revised Statutes § 32:143 and § 14:326 to the preachers.

The preachers further point to evidence that while demonstrating on March 25, 2005, Officer Clay Bennett told them they had to leave the intersection because they did not have a permit to demonstrate. The preachers later inquired about the process to obtain a permit, and Officer Bennett erroneously explained that the town council would have to vote on the issue.

And finally, the preachers point to evidence that on May 21, 2005, while demonstrating at a different intersection during a festival, Columbia officers restricted the distance the preachers could stand from the intersection. They argue that the restriction is consistent with the improper use of the standing statute. Further, they point to evidence that Russell and Coleman were arrested

8

for resisting arrest for failing to move when ordered to do. They argue that the resisting arrest statute is inapplicable because the elements of resisting arrest were not met.

Although the above evidence could arguably support a finding that Columbia had a persistent, widespread practice of applying inapplicable statutes to the preachers, we hold that such finding is not compelled when considering all of the evidence in the record. In addition to the evidence cited by the preachers, there is evidence that the preachers demonstrated at the Highway 165 intersection on May 15, 2004, December 11, 2004, and April 2, 7, 8, and 10, 2005, without any police interference despite Columbia's awareness of the demonstrations. Even after the preachers were informed that they would need a permit to demonstrate, the preachers continued to demonstrate in Columbia without a permit, and were not arrested again or threatened with arrest on the basis of the standing or permit statute.

As for the demonstration that occurred near the festival on May 21, 2005, the evidence demonstrates that officers did not restrict the distance the preachers could stand from the intersection because of the standing statute but because of an agreement the preachers made with the officers. Further, there is evidence that Chief Crockett acquired additional security for the festival, in part to protect the preachers because he believed they had a right to demonstrate and he had heard that some members of the public might want to interfere with that right. And finally, there is evidence that after the festival, the preachers continued to demonstrate in Columbia without interference.

The district court having reviewed all of the evidence in the record found that there was no persistent, widespread practice of applying inappropriate statutes to the preachers to restrict their First Amendment rights because of the

content of their signs.[7] This finding is supported by the evidence that generally Columbia officers allowed the preachers to demonstrate without interference. There were only a few isolated incidents where officers sought to restrict the preachers' rights. We hold that the district court's finding is supported by substantial evidence and not so against the preponderance of credible testimony that the finding does not reflect or represent the truth and right of the case. Accordingly, the district court's finding is not clearly erroneous.

B.

Relying on *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) the preachers argue that Columbia is liable for the deprivation of the preachers' rights because Columbia ratified the unconstitutional actions of Officer Miles. In *Praprotnik*, the Supreme Court provided that if "authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." 485 U.S. at 127. The theory of ratification, however, has been limited to "extreme factual situations." *Peterson v. City of Fort Worth, Tex.*, — F.3d —, No. 08-10258, 2009 WL 3818826, at *7 (5th Cir. Nov. 17, 2009); *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986). Therefore, unless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom. *See Peterson*, 2009 WL 3818826, at *7; *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 170 (5th Cir. 1985).

---

[7] There appears to be some discrepancy about whether the district court considered the events on May 21, 2005, in its determination that there was no widespread practice of applying inapplicable statutes to restrict the preachers' constitutional rights. Although the district court questioned the appropriateness of considering the events on May 21, 2005, we find that the district court considered the events that day when it reached the conclusion that "the events that occurred after the Preachers' break do not show that Columbia had a widespread practice of applying inapplicable statutes to restrict their constitutional rights." Accordingly, we do not find that the district court failed to consider the events on May 21, 2005, in determining whether a widespread policy existed.

Here, the preachers maintain that Columbia ratified the unconstitutional actions of Officer Miles by defending his actions and the basis for those action in a letter to the preachers' counsel. In pertinent part the letter states:

> As the Town of Columbia understands the facts to date, Mr. Russell and his followers were demonstrating on private property owned by the First United Methodist Church, as well as within 24 inches of the white line of U.S. Highway 165 and within 20 feet of a traffic light at the intersection of U.S. 165 and Church Street. Finally, as I am sure the video taken by Mr. Russell's followers reflects, their demonstrating was within a construction zone on US [sic] 165. As such, the police officers were well within the law to ask Mr. Russell to relocate his demonstration to another location.

The letter does not demonstrate that Columbia approved the actions of Officer Miles or the basis for those actions. Miles did not ask the preachers to relocate their demonstration but instead, ordered the preachers to leave the intersection. Further, although the letter listed some of the violations Miles erroneously believed "fit" the preachers' actions, the letter clearly lists other bases for why Miles's actions were within the law. Accordingly, the letter is insufficient to demonstrate that Columbia approved Miles's actions and the basis for those actions.

## C.

The preachers also contend that Columbia is liable for the preachers' constitutional deprivation because Columbia failed to adequately train its officers in protester rights. A municipality's failure to train its police officers can without question give rise to § 1983 liability. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989); *Brown v. Bryan County, OK*, 219 F.3d 450, 456 (5th Cir. 2000). However, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of a person with whom the police come into contact." *City of Canton*, 489 U.S. at 388. To demonstrate deliberate indifference, a

11

plaintiff must show that "in light of the duties assigned to specific officers or employees, need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. The failure to train must reflect a "'deliberate' or 'conscious' choice by a municipality." *Id.* at 389.

Accordingly, to prevail on a failure to train theory of municipal liability against Columbia, the preachers must demonstrate: (1) Columbia's training procedures were inadequate, (2) Columbia was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the infringement of the preachers' rights. *See Sanders-Burns*, 578 F.3d at 290. Here, the preachers fail to demonstrate that Columbia's training procedures were inadequate. The only evidence the preachers elicited to demonstrate that the training procedures were inadequate was evidence that Officer Miles did not receive any training on the rights of protesters after he became assistant chief. However, there is evidence that Miles did receive training on First Amendment rights at the police academy and at Grambling State University. He also attended Louisiana Police Officers Standard Training and received his certification. Further, he admitted that he was aware that the preachers had a right to demonstrate in Columbia. Evidence alone that Miles did not receive specific training on the rights of protesters after he became assistant chief is insufficient to demonstrate inadequate training.

IV.

For the reasons stated herein, we affirm the district court's decision finding that the Town of Columbia may not be held liable under 42 U.S.C. § 1983 for the unconstitutional actions of its officer. Accordingly, the district court properly denied WWSPF and Coleman's claims for relief.

AFFIRMED.

12