# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 23, 2011

No. 10-20603
Summary Calendar

Lyle W. Cayce
Clerk

VERONICA OKON,

Plaintiff - Appellant

v.

HARRIS COUNTY HOSPITAL DISTRICT,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC 4:09-CV-449

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Veronica Okon ("Okon") appeals a magistrate judge's grant of summary judgment in favor of the Harris County Hospital District (the "District") on Okon's 42 U.S.C. § 1983 claim alleging that the District's decision to terminate her employment was motivated by racial discrimination. Because we agree with the magistrate judge that Okon did not raise a genuine issue of material fact as

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20603

to whether the District had a policy or custom of racial discrimination, we AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

Okon, an African American female, became a full-time pharmacist with the District in March 1997. She was terminated on August 19, 2005, allegedly pursuant to a Reduction-in-Force policy ("RIF")[1] promulgated by the District's Board of Managers ("Board").[2] The RIF provided a specific hierarchy for the reduction of employees. First to be terminated were all pending new hires or new transfers, followed by contract or agency staff. The third group subject to termination included employees on entry or performance probation. The fourth group consisted of employees who had received at least two formal disciplinary actions within the previous 365 days.[3] The final group included employees with the lowest department-specific grid scores.[4] In the event that two or more employees had the same grid score, the policy provided that length of service determined retention preference. According to the policy, each department had to submit a reduction plan, including an assessment of how particular positions and/or individuals were identified as those to be reduced.

---

[1] We note that we have previously held that a reduction-in-force is a legitimate, nondiscriminatory reason for discharge. *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996).

[2] Neither party disputes that the District is managed, controlled, and administered by a Board of Managers appointed by the Harris County Commissioners Court. TEX. HEALTH & SAFETY CODE ANN. § 281.021 (West 2010); *id.* § 281.047 (West 2010).

[3] Okon claimed, and the magistrate judge found, that she did not fall into the fourth category because the only document in her file for the relevant time period was a verbal counseling form for violation of a time and attendance policy.

[4] The RIF required that reduction be based on an evaluation of relevant factors such as job performance, seniority, and other pertinent department-specific criteria. The magistrate judge found that the pharmacy department based its grid scores on: a three-year average of employee performance appraisals; second language skills; scores on a special skills test; seniority; and availability to work different shifts.

No. 10-20603

Okon filed suit against the District in February 2009, alleging that the District deviated from its neutral RIF and terminated her because of her race. Because Okon waited almost four years after her termination to file suit against the District, she could not assert a claim under Title VII, 42 U.S.C. § 2000e, which has a two-year statute of limitations. Instead, she brought her claim under 42 U.S.C. § 1981, which has a four-year statute of limitations. The parties consented to have a magistrate judge conduct all proceedings. *See* 28 U.S.C. § 636(c). The judge allowed Okon to amend her complaint to add a claim under 42 U.S.C. § 1983, as a local government cannot be held liable for employment decisions unless the plaintiff satisfies the "custom or policy" test fashioned for suits against a municipality under § 1983. *Evans v. City of Houston*, 246 F.3d 344, 358 (5th Cir. 2001).

In support of her case, Okon alleged that three other similarly-situated employees—all of whom were outside her protected class—remained employed, even though they had less experience or were less qualified. Okon believed that the decision to terminate her was based on factors outside of those outlined in the RIF, including her failure to pass a skills test administered by the pharmacy department. Okon's immediate supervisor stated in his deposition that the reductions in the pharmacy department did not conform to his understanding of the RIF, and those decisions were made without his input by individuals higher up in management. Of the sixteen terminated in the pharmacy division, eleven were African American.

After discovery, the District filed a motion for summary judgment, alleging that Okon had failed to establish a prima facie case of racial discrimination and that she had not created a genuine issue of material fact as to the District's liability under § 1983. The magistrate judge found that Okon had established

3

a fact issue as to whether a violation of § 1981 occurred.[5]  Specifically, Okon provided sufficient evidence that: she was a member of a protected group; she suffered an adverse employment action; she was qualified for her position; and another similarly-situated employee who was not a member of her protected class remained in a similar position.  The magistrate judge ended the *McDonnell Douglas* analysis after finding that the District had not provided a legitimate, nondiscriminatory reason for its apparent deviation from the RIF when it fired Okon instead of another similarly-situated employee.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  However, because Okon failed to raise a genuine issue of material fact as to the District's § 1983 liability, the magistrate judge granted the District's motion for summary judgment.  Okon timely appealed.[6]

## II. STANDARD OF REVIEW

We review a grant of summary judgment *de novo*, applying the same standard as the district court.  *Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006); *accord Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) ("We review a judgment rendered by a magistrate judge just as we do a judgment rendered by a district judge.").  Summary judgment is appropriate if

---

[5] The elements of discrimination claims under Title VII and § 1981 are the same.  *Pratt v. City of Houston*, 247 F.3d 601, 606 n.1 (5th Cir. 2001).  To establish a prima facie case of intentional discrimination in a reduction-in-force case, Okon must show the following: (1) she is a member of a protected group; (2) she was adversely affected by the employer's decision; (3) she was qualified for another position at the time of discharge; and (4) there is sufficient evidence, either circumstantial or direct, from which a fact finder may reasonably conclude that the employer intended to discriminate in taking the adverse employment action.  *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir. 1996).  If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to assert a legitimate, nondiscriminatory reason for the employment action.  *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

[6] We have jurisdiction over this case pursuant to 28 U.S.C. § 636(c)(3).  *See also* FED. R. CIV. P. 73(c) ("In accordance with 28 U.S.C. § 636(c), an appeal from a judgment entered at a magistrate judge's direction may be taken to the court of appeals as would any other appeal from a district-court judgment.").

the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A factual dispute is 'genuine' where a reasonable party would return a verdict for the non-moving party." *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 282 (5th Cir. 2003) (citation omitted). In considering a summary judgment motion, we view the evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

### III. DISCUSSION

We focus here on the only issue briefed by the parties—whether Okon presented evidence sufficient to raise a genuine issue of material fact as to the District's liability under § 1983.[7] To establish municipal liability under § 1983, Okon must show that the District had a policy or custom that caused her constitutional deprivation. *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752 (5th Cir. 2009). *Respondeat superior* liability does not exist in § 1983 actions. *Id.* at 752-53. Rather, Okon must demonstrate that (1) the municipality had a policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation was the "moving force" behind the policy or custom. *Id.*

We have defined an official policy for purposes of § 1983 liability as "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.'" *Bennett v. City of*

---

[7] Because neither party challenges the magistrate judge's conclusion that Okon established a prima facie case of racial discrimination or the judge's *McDonnell Douglas* analysis, we express no opinion as to the correctness of those holdings.

*Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam). Thus, "[w]hen the person who committed the challenged act is in charge of policymaking in that part of the government, 'policy' can sometimes be found to have been established by the very act itself." *Hampton Co. Nat'l Sur. LLC v. Tunica Cnty.*, 543 F.3d 221, 227 (5th Cir. 2008). In such cases, "[t]he act must be by a final decisionmaker who also is a policymaker, unconstrained by policies imposed from a higher authority." *Id.* Our task "is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *Gelin*, 456 F.3d at 527 (quoting *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784-85 (1997) (citation omitted)). The identification of officials who act as policymakers is a question of state law. *Id.*

Alternatively, a policy may consist of a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett*, 735 F.2d at 862; *see also Zarnow v. City of Wichita Falls,* 614 F.3d 161, 169 (5th Cir. 2010) ("A pattern of conduct is necessary only where the municipal actors are *not* policymakers."), *cert. filed*, No. 10-1036 (U.S. Feb. 14, 2011). Either the governing body of the municipality or an official to whom that body has delegated policy-making authority must have actual or constructive knowledge of such a custom. *Bennett*, 735 F.2d at 862. "Actual knowledge may by shown by such means as discussions at council meetings or receipt of written information." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (en banc). Constructive knowledge "may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Id.*

6

No. 10-20603

The causation prong of municipal liability requires a plaintiff to "show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). "[P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes" the municipality's culpability and causation. *Id.* at 405. However, where a plaintiff claims not that the municipality directly inflicted the injury, but caused an employee to do so, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.*

Turning to Okon's case, Okon has not presented evidence of a widespread or persistent practice by the District or its employees of basing termination decisions on race. Although Okon alleges that the RIF affected multiple employees, she has not produced evidence that the RIF was repeatedly deviated from so as to discriminate against employees over a time span sufficient to support the existence of a custom for which the District may be held liable. *See Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) ("[O]ne act is not itself a custom.").

Okon argues that the District's liability stems from the actions of the Board itself in allegedly approving a deviation from the RIF. Both parties agree that the Board is the District's official policymaker on employment policy.[8] Yet, Okon does not allege that the Board members themselves harbored racial animus and thus singled out Okon for termination. Although Okon asserts that the Administrative Director of the Pharmacy Department, or, more generally,

---

[8] Under Texas law, the Board manages, controls, and administers the District. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 281.021, 281.047 (West 2010). The Board also has authority to hire employees. *Id.* § 281.028.

No. 10-20603

"upper management" manipulated the RIF to discriminate against her, Okon does not argue that the Board delegated its policymaking authority to any particular subordinate.[9]

Further, Okon has not created a fact issue as to whether the District may be liable under a ratification theory, as she has not shown that the Board had actual or constructive knowledge of and approved any alleged racial animus underlying the decision to terminate her.[10] Although the RIF required that each department's reduction plan include reasons for why each individual or position was selected for termination, the evidence Okon presented does not raise a fact issue as to whether the Board was in fact aware of any alleged racial animus towards Okon. Okon has not shown that the Board received prior notice of racial discrimination committed by subordinates or that the Board was alerted to the basis for the decision to terminate Okon during any purported review of the

---

[9] We also note that simply because a member of upper management may have placed Okon on the termination list does not mean that such an official was delegated final policymaking authority by the Board. *See St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988) ("Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy."); *Bennett*, 728 F.2d at 769 (stating that delegation "requires more than a showing of mere discretion or decisionmaking authority on the part of the delegee"). Thus, the Supreme Court has held that a city would not "automatically be liable under § 1983 if one of its employees happened to apply the policy in an unconstitutional manner, for liability would then rest on *respondeat superior*." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989); *see also Bolton v. City of Dallas*, 541 F.3d 545, 549 (5th Cir. 2008) ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the decision-maker's departure from them, are the act of the municipality." (quoting *Praprotnik*, 485 U.S. at 127)).

[10] Use of the ratification theory has been limited to "extreme factual situations." *World Wide Street Preachers Fellowship*, 591 F.3d at 755 (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009), *cert. denied*, 131 S. Ct. 66 (2010)). Only if "the authorized policymakers approve a subordinate's decision *and the basis for it*" would their ratification be chargeable to the municipality. *Praprotnik*, 485 U.S. at 127 (emphasis added); *see also World Wide Street Preachers Fellowship*, 591 F.3d at 755 ("[U]nless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom.").

pharmacy department's plan.[11] *See Beattie*, 254 F.3d at 604 (noting the "rubber stamp" exception to the actual knowledge requirement, but stating the general rule that "[w]ithout a showing that the board had actual knowledge of the alleged improper basis of [a supervisor's] recommendation, the board cannot be liable for the alleged retaliation"); *see also Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 225 (5th Cir. 1999) (reversing a grant of summary judgment after finding that the Board of Trustees acquired actual knowledge of the illegal basis underlying the decision to transfer the plaintiff; therefore, the Board's action affirming that decision could fairly represent official policy); *Milam v. City of San Antonio,* 113 F. App'x 622, 625 n.3 & 626 (5th Cir. 2004) (unpublished) (noting that if a policymaker approved a decision to transfer an employee *knowing* of the supervisor's retaliatory motive for doing so, the governmental entity could be liable; however, if the policymaker lacked awareness of the basis for that decision, the policymaker had not ratified it and could not be held liable).

While this case was on appeal, the Supreme Court's decided *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011).[12] *Staub* fleshed out the "cat's paw" theory of liability, holding that a decisionmaker's exercise of judgment is not

---

[11] In an attempt to create a fact issue, Okon submitted several documents with her response to the District's motion for summary judgment. One such document indicates that the head of the pharmacy department recommended her termination. The justification given for that action was "position elimination," not Okon's race. According to the RIF, the department-specific plans were to be approved by administration and reviewed by legal counsel prior to implementation. Okon presented a time line indicating that the pharmacy department's reduction plan was reviewed with the "Administrative Director," the "Administrator," "Legal," and the "HR Administrator." The time line further notes a meeting with the Board, but does not indicate the topic of that meeting nor that the meeting in fact occurred. The time line is not accompanied by an affidavit. Assuming *arguendo* that the time line is competent summary judgment evidence, it still fails to raise a fact issue as to whether the Board had actual knowledge of any alleged racial animus.

[12] We requested and received from the parties supplemental briefing addressing this case.

always a superseding cause of an adverse employment action if: (1) a subordinate acts with illegal animus intending to cause the adverse action; and (2) the subordinate's acts were a proximate cause of the adverse action. *Id*. Prior to *Staub*, our court had recognized this "rubber stamp" or "cat's paw" exception, which allows for imputation of the tainted motives of a subordinate to the policymaker if the policymaker accepted the subordinate's recommendations without evaluation. *See Rios v. Rossotti*, 252 F.3d 375, 381-82 (5th Cir. 2001); *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 604 n.14 (5th Cir. 2001).

Although Okon asserts that the Board approved the decisions of its subordinates, she has not argued that the Board merely rubber-stamped those personnel decisions. Because Okon failed to present any evidence or argument to support a "cat's paw" theory of liability, we do not express an opinion on such claims under § 1983 in light of *Staub*. *See Beattie*, 254 F.3d at 604 n.14 (declining to address the exception because, although the plaintiff suggested that a school board "rubber stamped" an employment decision, the employee presented no evidence to support that assertion); *see also Brown v. N. Panola Sch. Dist.*, No. 10-60685, 2011 U.S. App. LEXIS 6779, at *2 (5th Cir. Mar. 31, 2011) (expressing no view on the legal standard applicable to cat's paw claims under § 1983 after *sua sponte* examining *Staub*).

Finally, we turn to Okon's "failure to train" argument as an alternative route to impose liability on the District. We requested supplemental briefing from the parties on the Supreme Court's recent decision in *Connick v. Thompson,* 131 S. Ct. 1350 (2011). Review of the supplemental briefing confirms that *Connick* essentially forecloses Okon's argument that the District may be liable under a "failure to train" theory based on a one-time deviation from the neutral RIF. *See id.* (holding that a district attorney's office may not be held liable under § 1983 for failure to train based on a single *Brady* violation). While

a municipality's failure to train its employees can give rise to § 1983 liability in certain circumstances, the inadequacy of the training must amount to "deliberate indifference to the rights of a person with whom the [employees] come into contact." *World Wide Street Preachers Fellowship*, 591 F.3d at 756 (quoting *City of Canton*, 489 U.S. at 388).  Okon has not provided evidence of a pattern of violations and has not created a fact issue as to the obvious inadequacy of the District's training policies or that such inadequacy was likely to result in a constitutional violation.[13]  *See Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) ("To establish deliberate indifference, 'a plaintiff must usually demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.'" (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (per curiam) (internal quotation omitted))), *cert. denied*, 130 S. Ct. 1146 (2010).

In sum, Okon has not produced sufficient evidence to create a genuine issue of material fact as to whether the District had a custom or policy that served as a motivating force behind Okon's alleged constitutional deprivation. We therefore AFFIRM summary judgment for the District.

---

[13] In fact, Okon's supervisor stated in his deposition that he was trained by the District on the importance of equal protection laws and in how to apply the District's policies, practices, and procedures in a nondiscriminatory manner.

11