# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60618

United States Court of Appeals
Fifth Circuit

**FILED**

June 21, 2019

Lyle W. Cayce
Clerk

CARL YOUNG,

        Plaintiff–Appellee,

versus

BOARD OF SUPERVISORS OF HUMPHREYS COUNTY, MISSISSIPPI,

        Defendant–Appellant.

---

Appeal from the United States District Court
for the Northern District of Mississippi

---

Before SMITH, WIENER, and ELROD, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Carl Young sued the Board of Supervisors of Humphreys County, Mississippi ("the Board"), and its president under 42 U.S.C. § 1983, contending that they had unlawfully deprived him of the use of several of his properties. A jury returned a verdict for Young, and the district court denied the Board's motion for judgment as a matter of law ("JMOL") or a new trial. Finding no reversible error, we affirm.

No. 18-60618

I.

Young bought three empty houses on September 2, 2015, and retained a local contractor eight days later to clean and renovate them. On September 18, Charles Edwards, the County Building Inspector, posted a condemnation notice on one of the properties, declaring each of them unsafe and ordering "[a]ll persons . . . to keep out as long as this notice remains posted." Nonetheless, according to Edwards, Young's properties complied with county rules and ordinances and state law at the time he posted the notice. In fact, Edwards testified that he would not have posted the condemnation notice except that R.D. "Dickie" Stevens—the president of the Board[1]—had instructed him to do so.[2]

On October 5, the Board met and unanimously voted to hold a hearing on November 17 for the condemnation of Young's properties.[3] The Board maintains that the term "condemnation" in its October meeting minutes was "a clerical error." It further avers that it was not trying to condemn Young's properties but was attempting to give Young notice that he needed to clean them up. The Board separately stipulated, however, that it "speaks through its Minutes." In any event, the Board instructed its attorney to send Young a letter telling him to remove, by November 17, debris left by the previous owners. Willie Bailey, the Board's attorney, sent Young a letter on October 13, explaining that the Board had voted to hold a hearing on November 17 "to determine

---

[1] The Board is a five-person body that governs Humphreys County.

[2] Stevens disputed that narrative at trial, insisting that he had told Edwards to put up a "cease and desist" sign informing all persons to stop entering the properties and taking items from the houses.

[3] The meeting minutes describe that vote as follows: "Supervisor Broomfield moved and Supervisor Brown seconded the motion setting a hearing on November 17, 2015[,] for owner of property in North Gate and Griffin Circle for *condemnation of property*." (Capitalization omitted and emphasis added.) The Board members passed the motion by a 5–0 vote.

2

whether the property . . . [was] in such a state of uncleanliness as to be a menace to the public health, safety and welfare of the community."

Young appeared at the November meeting and asked for a continuance to obtain counsel. The parties continued the hearing until December 7. Young obtained counsel, who informed the Board a few days before the rescheduled hearing of Young's intent to sue the Board. The Board, in turn, told Young that it would not hold the hearing and was turning the situation over to its insurance company.

The Board never conducted a condemnation hearing, and neither Stevens nor any other Board member instructed Edwards to remove the condemnation notice from Young's property. The notice remained in effect for over two years until the Board sent Young a letter on February 12, 2018, telling him that he could enter his properties and start repairs.

## II.

Young sued the Board and Stevens, in his individual and official capacities, in state court, seeking civil damages under § 1983. Young alleged that Stevens, acting under color of state law, had violated his Fifth and Fourteenth Amendment rights by instructing Edwards to post the condemnation notice without a legal basis. Young averred that the Board was liable also because it had ratified Stevens's actions during the October 2015 meeting by unanimously voting to continue condemnation proceedings.

Defendants removed, and the district court dismissed the claims against Stevens but allowed the claims against the Board to proceed to trial. The sole issue was whether the Board had ratified Stevens's actions, meaning that it could be held liable under § 1983. The Board unsuccessfully moved for JMOL at the end of Young's case-in-chief. The Board renewed its motion after its

No. 18-60618

case-in-chief, and the court again denied it. The jury returned a verdict for Young, awarding $25,000 in damages. The court entered a final judgment for $43,261.57 in damages, taxes, fees, and litigation expenses. The Board timely moved for a JMOL under Federal Rule of Civil Procedure 50(b) or, in the alternative, a new trial. The court denied the motion, and the Board appealed.

## III.

## A.

The Board contends that it was entitled to a JMOL because Young failed to make out a § 1983 claim under a theory of ratification. "We review de novo the district court's denial of a motion for [JMOL], applying the same standard as the district court." *Seibert v. Jackson Cty.*, 851 F.3d 430, 434 (5th Cir. 2017) (quoting *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008)). "A JMOL is appropriate when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue.'" *Id.* (quoting FED. R. CIV. P. 50(a)). "When a case is tried to a jury, a motion for [JMOL] 'is a challenge to the legal sufficiency of the evidence supporting the jury's verdict.'" *Cowart v. Erwin*, 837 F.3d 444, 450 (5th Cir. 2016) (quoting *Heck v. Triche*, 775 F.3d 265, 272 (5th Cir. 2014)). Our review of the jury's verdict is highly deferential. "[W]e draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party, and will uphold the verdict unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Id.* (internal quotation marks and citation omitted).

"To establish municipal [or county] liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policy-maker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *see also* FIFTH

No. 18-60618

CIRCUIT PATTERN JURY INSTRUCTIONS (Civil Rights—42 U.S.C. § 1983) 10.5 (2016). One way of establishing liability is to show that a policymaker ratified the acts of a subordinate. "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). We have "limited the theory of ratification to extreme factual situations." *Peterson*, 588 F.3d at 848 (internal quotation marks and citation omitted). "[U]nless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification . . . is insufficient to establish an official policy or custom." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009).[4]

There was legally sufficient evidence for a reasonable jury to conclude that the Board ratified the unlawful initiation of condemnation proceedings. Drawing all inferences in the light most favorable to Young, testimony at trial showed that Stevens had directed Edwards to post the condemnation notice, even though Young's properties were compliant with state and county law. The Board ratified that action at its next meeting by unanimously voting to proceed with condemnation, and the notice was not withdrawn for over two years. Those facts are "sufficiently extreme," *id.*, to support a finding that the Board approved both Stevens's direction to post the condemnation notice and the

---

[4] The Board suggests that we have limited the ratification theory almost exclusively to cases involving a "use of excessive force that resulted in bodily injuries or death." To the contrary, we have regularly applied ratification to economic injuries. *See Culbertson v. Lykos*, 790 F.3d 608, 621–22 (5th Cir. 2015) (finding that plaintiffs alleged sufficient facts to allow their challenge to the loss of their jobs to proceed on a ratification theory). The Board also wrongly maintains that a ratification theory of liability is appropriate only where the injury is particularly severe. But *World Wide Street Preachers Fellowship*, 591 F.3d at 755, indicates that the theory applies where a policymaker ratifies, for example, "an obvious violation of clearly established law."

No. 18-60618

underlying implication that the properties were condemnable.

The Board counters that it is "undisputed" that the Board never voted to approve Stevens's direction to Edwards to post the condemnation notice on Young's property, nor did it vote to approve the basis for Stevens's decision. Though the Board did not specifically vote to ratify Stevens's action or the reasons supporting it, taking the facts in the light most favorable to Young, the Board's unanimous vote to proceed with condemnation is legally sufficient evidence for a reasonable jury to conclude that the Board ratified Stevens's decision to have Edwards post the notice.

## B.

The Board challenges the verdict based on three alleged errors in the jury instructions. "We review challenges to jury instructions for abuse of discretion and afford the trial court great latitude in the framing and structure of jury instructions." *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 240 (5th Cir. 2014). To show reversible error, the party challenging the instruction "must demonstrate that the charge as a whole creates 'substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.'" *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1318 (5th Cir. 1994) (quoting *Bender v. Brumley*, 1 F.3d 271, 276 (5th Cir. 1993)). Even if we find that the "instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case." *Id.*

## 1.

The Board takes issue with Jury Instruction 4, which told the jury that it could find the Board liable if it found, by a preponderance of the evidence, one of three things: (1) "The Board of Supervisors authorized a violation of

No. 18-60618

Mr. Young's property rights," (2) "Dickie Stevens had been given the authority by the Board to take the action he took with respect to Mr. Young's property," or (3) "The Board ratified Dickie Stevens' actions after the fact." The Board objects to both the second and third options.

The Board contends that the second option erroneously permitted the jury to decide whether the Board gave Stevens final policymaking authority. That, the Board insists, was a question of law for the court, not a fact question for the jury. Even assuming that the court erred in allowing the jury to determine whether Stevens was a policymaker, there was legally sufficient evidence for a reasonable jury to hold the Board liable on a ratification theory, as we have explained. Thus, "any injury resulting from the erroneous instruction is harmless." *Eastman Chem. Co.*, 775 F.3d at 240 (quoting *Rogers v. Eagle Offshore Drilling Servs., Inc.,* 764 F.3d 300, 303 (5th Cir. 1985)).

Regarding the third option, the Board contends that Jury Instruction 4 incorrectly stated the law on ratification because it "did not require Young to prove the existence of an unconstitutional policy." The Board continues that the ratification theory requires a plaintiff to prove a separate violation of an official policy or custom, not just that the policymaker ratified a subordinate's action. But that misstates the ratification theory. Showing that a policymaker ratified the actions of a subordinate is one way of making out a § 1983 claim against a county or municipality; it is not an additional factor that must be established.[5]

2.

The Board claims that Jury Instruction 5 wrongly told the jury that

---

[5] *See, e.g., Culbertson*, 790 F.3d at 621 ("If a final policymaker approves a subordinate's recommendation and also the subordinate's reasoning, that approval is considered a ratification chargeable to the municipality.").

No. 18-60618

Young had to prove "that he was deprived of his property rights in an arbitrary and capricious manner." The Board maintains that the correct standard of liability was one of "deliberate indifference."

The Board fails to show that this instruction "creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Mijalis*, 15 F.3d at 1318 (internal quotation marks and citation omitted). The deliberate-indifference standard typically applies when a governmental entity failed to act.[6] The arbitrary-and-capricious standard, however, generally applies to action taken by a governmental entity, as here.[7]

In any event, the district court ultimately instructed the jury on deliberate indifference. Because juries are presumed to follow instructions, *Hollis v. Provident Life & Accident Ins. Co.*, 259 F.3d 410, 417 (5th Cir. 2001), we conclude that the jury found the Board liable under both an arbitrary-and-capricious standard and a willful-indifference standard. Accordingly, "the challenged instruction could not have affected the outcome of the case," *Mijalis*, 15 F.3d at 1318, and there is no reversible error.

---

[6] *See, e.g.*, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998) (noting that the standard governs "claims under § 1983 alleging that a municipality's actions in failing to prevent a deprivation of federal rights was the cause of the violation"). *See also, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."). Not surprisingly, the cases the Board cites on appeal to contend that deliberate indifference was the proper standard all concern a government entity's failure to act. *See, e.g.*, *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); *Brown v. Bryan Cty.*, 219 F.3d 450, 462 (5th Cir. 2000).

[7] *See, e.g.*, *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 217 (1985) (considering whether the university's dismissal of a student was arbitrary and capricious such that it could support a claim under § 1983); *Yur-Mar, L.L.C. v. Jefferson Par. Council*, 451 F. App'x 397, 401 (5th Cir. 2011) (per curiam) (applying arbitrary-and-capricious standard in challenge to parish's zoning regulations).

No. 18-60618

3.

The Board contends that the district court erred in refusing to give the Board's proffered Jury Instruction 8, which would have told the jury that Young needed to prove an official policy or widespread custom. A party challenging the refusal to give a proffered jury instruction "must show as a threshold matter that the proposed instruction correctly stated the law." *Id.* As we have explained, the Board's view of the ratification theory of liability is erroneous: Young did not need to demonstrate that the Board acted according to an official policy or custom. The rejection of Jury Instruction 8 does not warrant a new trial.

The judgment is AFFIRMED.