# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 9, 2010

No. 09-10313

Lyle W. Cayce
Clerk

DELORES A ZARNOW, Independent Administratrix for the Estate of Dr Allen J Zarnow, Deceased,

Plaintiff - Appellant Cross-Appellee

v.

CITY OF WICHITA FALLS TEXAS; KEN COUGHLIN,

Defendants - Appellees Cross-Appellants

Appeals from the United States District Court
for the Northern District of Texas

Before BENAVIDES, STEWART, and SOUTHWICK, Circuit Judges.

Leslie H. Southwick, Circuit Judge.

This is a suit under Section 1983. The claim is that a city and its police chief violated a person's Fourth Amendment rights. The district court granted summary judgment in favor of the defendants. We AFFIRM.

## I. STATEMENT OF FACTS

Dr. Allen Zarnow was a physician at the Clinics of North Texas ("the Clinic") in Wichita Falls, Texas. In July 1999, while Zarnow was on vacation, Clinic employees discovered a gun, an ammunition magazine, several boxes of shells, blasting caps, ammunition, and fuses in his office. None of the items were active explosive devices. The Clinic's manager contacted the police.

No. 09-10313

Employees at the Clinic reportedly told the first officer on the scene that Zarnow was a "gun expert and salesman." Based on his military experience, the police officer concluded that the found items were "dangerous." Firefighters, however, thought the materials did not constitute an imminent hazard. The responding officer contacted the Bureau of Alcohol, Tobacco, and Firearms ("ATF") and also telephoned his superiors. Police Chief Ken Coughlin arrived at the Clinic sometime after the initial discovery. Although keeping apprised of the situation, he apparently did not assume command of the scene.

Shortly thereafter, police applied for a warrant to search Zarnow's home. The affidavit on which the warrant application was based stated that the offense believed to have been committed was "possession of illegal explosives and other explosive devices" in violation of Texas Penal Code Sections 46.05 and 46.09. Among the allegations asserted in the affidavit were that "explosives" and "explosive devices" had been identified at Zarnow's office by "an expert on bombs and explosives." A local magistrate signed the warrant, which permitted officers to search for explosive devices and prohibited weapons, along with any documents or notes pertaining to the ownership of the weapons or the house.

While waiting for the magistrate to sign the warrant, police surrounded Zarnow's home for surveillance. Upon discovering that Zarnow and his family had returned from vacation, police ordered Zarnow to exit the house. Zarnow acquiesced. During a subsequent interrogation, Zarnow assured police officers that he was a properly licensed firearms dealer, and offered to produce paperwork showing his entitlement to possess all of the materials recovered at his office. Police asked to see the documents, and Zarnow informed them that the paperwork was in the house.

Zarnow was accompanied by police officers and ATF agents into the residence, where he presented papers proving that he was licensed to possess weapons and explosive materials. As Zarnow showed the documents to the ATF

2

agent, the police officers began a consensual search of the home. When they discovered a box marked "explosives" in plain view, Zarnow withdrew his consent and asked the officers to leave. Officers informed Zarnow that his consent was no longer necessary since they had a warrant to search the home.

The next morning, Chief Coughlin assembled all of the firearms and ammunition seized at Zarnow's home and laid them out for the news media to photograph. Zarnow was jailed for possession of prohibited weapons. Over the next few days, the police executed an additional search warrant at Zarnow's home and yet another at his lake house. However, a Wichita Falls grand jury refused to indict, and no charges were ever brought against him.

During the searches of Zarnow's homes, police officers seized weapons, ammunition, currency, bonds, silver, band-aids, books, prescription medicines, and over-the-counter medications. Although a number of these items were not covered by the search warrant, police justified their seizure by citing to the "plain view" doctrine. Officers later testified that they understood "plain view" to permit the collection of any item that might be evidence of any crime. The police chief testified that it was his practice to seize more than was necessary during an initial search, so that he could later "rule things in or out."

Zarnow filed suit in the U.S. District Court for the Northern District of Texas, naming as defendants the City of Wichita Falls, Chief Coughlin, eight named subordinate officers, and eight unnamed officers all in their individual and official capacities. Zarnow alleged violations of the Second, Fourth, Fifth, Sixth, and Fourteenth Amendments, and sought relief under 42 U.S.C. § 1983. During the litigation, Allen Zarnow died. His widow, as administratrix of his estate, was substituted as plaintiff.

Several officers were dismissed from the suit. All official capacity claims were dismissed except for those against Chief Coughlin. The remaining defendants later moved for summary judgment on qualified immunity grounds.

No. 09-10313

The summary judgment motion was granted as to Zarnow's claims under the Second, Fifth, Sixth, and Fourteenth Amendments. However, summary judgment was denied as to the Fourth Amendment claims. The City and the individual officers appealed.

On appeal, a panel of this Court determined that it was without jurisdiction to hear the City's appeal because the denial of summary judgment was not a final order. *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401 (5th Cir. 2007). As to the claims against the individual officers, some of their conduct likely violated Zarnow's Fourth Amendment rights. Nevertheless, the panel held that the officers were entitled to qualified immunity and dismissed the claims against them. Only Zarnow's claims against the City and Chief Coughlin in his official capacity remained. The case was remanded to the district court for further proceedings.

On remand, Zarnow alleged that the City was responsible for the officers' misuse of the plain view doctrine during the home searches. Zarnow argued that the officers' expansive view of the doctrine was inconsistent with a Supreme Court decision that "plain view" seizures had to be supported by probable cause. *Arizona v. Hicks*, 480 U.S. 321, 326 (1987). Zarnow contended that the officers' improper use of the "plain view" doctrine constituted a "policy or custom" of the City that was implemented by its policymaker, Chief Coughlin.

Both parties again moved for summary judgment, which was granted in favor of the City. The court found that Chief Coughlin was a "potential policymaker," but that the officers' use of the plain view doctrine was not a "custom or policy" of the City. Consequently, the court did not reach whether a policy was the "moving force" behind the alleged constitutional violation.

Zarnow timely appealed the district court's grant of summary judgment in favor of the City. The City cross-appealed to challenge the court's finding that Chief Coughlin was a "potential policymaker."

4

No. 09-10313

## II. DISCUSSION

We review a district court's grant of summary judgment *de novo.* *Mahaffey v. Gen. Sec. Ins. Co.*, 543 F.3d 738, 740 (5th Cir. 2008). A district court should grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). In making this determination, the evidence must be viewed in the light most favorable to the nonmoving party. *Mahaffey*, 543 F.3d at 740.

### A.    *Municipal Liability*

A municipality is a "person" subject to suit under Section 1983. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A local government entity may be sued "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (quoting *Monell*, 436 U.S. at 690). Alternatively, municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. *Monell*, 436 U.S. at 690-91. "[M]unicipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted).

The elements of the *Monell* test exist to prevent a collapse of the municipal liability inquiry into a *respondeat superior* analysis. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 415 (1997). A municipality may not be subject to liability merely for employing a tortfeasor. *See, e.g., City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989). Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation. *Id*. at 391-92.

5

No. 09-10313

### 1.    *Municipal Liability – Policymaker*

The first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality. *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 748-49 (5th Cir. 2005). A policymaker is "one who takes the place of the governing body in a designated area of city administration." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). He or she must "decide the goals for a particular city function and devise the means of achieving those goals." *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc). Zarnow insists that Chief Coughlin acted as the City's policymaker and was actively aware of the errant plain view policy used in the seizure of items from her home.

A city's governing body may delegate policymaking authority (1) by express statement or formal action or (2) "it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role." *Id.* There is no express delegation here.

As evidence of the City's conduct or practice, Zarnow produced several "General Orders" issued by the chief of police to the police department.[1] Each General Order begins with the language, "It is the policy of this department . . ." and proceeds to set out regulations addressing specific behaviors. These orders are binding on the officers until reviewed, altered, or changed by the City Manager or City Council. Zarnow asserts that the chief's general power to issue such orders establishes a custom by which the chief creates law enforcement policy for the City. *See Gros v. City of Grand Prairie, Tex.*, 181 F.3d 613, 616 (5th Cir. 1999).

---

[1]    There is no argument that the police chief promulgated a General Order specifically addressing the "plain view" policy of which Zarnow complains. He did not.

6

No. 09-10313

The City, on the other hand, contends that Chief Coughlin was a "decisionmaker" but not an official policymaker for the City. There is a fine distinction between a policymaker and a decisionmaker. *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993). The fact that an official's decisions are final is insufficient to demonstrate policymaker status. *Id.* at 1248.

The City employs state law as evidence that Coughlin is not a policymaker. Wichita Falls is a "home rule city" according to Texas Law. Its powers are limited only by the Texas Constitution, state statutes, and the City's Charter. Tex. Loc. Gov. Code § 51.072 (Vernon 2001). In Wichita Falls, the City Council and City Manager hold general legislative and executive powers. The City insists that the City Manager and City Council have the relevant authority over the police department as established by Article 12 of the City Charter:

> The police department shall be under the direction of a chief of police, who shall be appointed by the city manager and who, subject to the supervision of the city manager and to such rules regulations and orders prescribed by the city manager not inconsistent with the City Charter and ordinances, shall have immediate control and direction of such department . . . .

This is the kind of authority, the City argues, that equates to policymaking authority in the specific department where the constitutional deprivation occurred. *McMillan v. Monroe Cnty., Ala.*, 520 U.S. 781, 786-87 (1997).

Relying on Article 12, the City insists that the City Manager has supervisory authority over the police chief. This type of review of the police chief's actions demonstrates, the City argues, that he is not a final policymaker. *See Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 244-45 (5th Cir. 1993).

The nature of the administrative oversight is important in determining "policymaker" status. An official may be a policymaker even if a separate governing body retains some powers. *See Bennett*, 728 F.2d at 769. An official may be termed a "policymaker" even if the municipality retains "the prerogative

7

of the purse and final legal control by which it may limit or revoke the authority of the official." *Id.* Further, the subject matter of administrative review must be precise in order to attach the presumption against policymaking. *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 603 (5th Cir. 2001). "The mere existence of oversight, however, is not enough; the oversight must pertain to the area of authority in question." *Id.* (citation omitted).

Although the City offered evidence that the City Council periodically authorized the creation of various police task forces, those resolutions have little to do with police policy. There is no evidence that the City Council has ever commented authoritatively on the internal procedures of the department. Consequently, the administrative review process in place here does not conclusively demonstrate that Chief Coughlin is not a policymaker.

Still, we have maintained that "neither complete discretionary authority nor the unreviewability of such authority automatically results in municipal liability. There must be more." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 551 (5th Cir. 2008). We agree with the district court that the General Orders promulgated by the police chief sufficed to be the "more" that is needed to prove policymaking authority in these circumstances. On this evidence, the chief of police is the sole official responsible for internal police policy. Others have only marginal involvement with the internal procedures of the police force. The alleged constitutional violation arose from a peculiar interpretation of a "plain view" procedure, which was employed only during police activities.

Although no General Order was ever entered regarding this policy, it appears that the police chief would have been authorized to speak on the City's behalf if such a policy was created. Accordingly, we hold that the City impliedly delegated its policymaking authority to the chief of police.

   2.     *Municipal Liability – Official Policy or Custom*

8

Upon finding a policymaker, we must next consider whether the allegedly unconstitutional action constitutes a "custom or policy" of the municipality. We have identified two forms that "official policy" may take. First, a plaintiff may point to a policy statement formally announced by an official policymaker. *See Webster*, 735 F.2d at 841. In the alternative, the plaintiff may demonstrate a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id*. Because no formal directive exists concerning the police department's "plain view" practices, our analysis turns on the second form of policy.

A plaintiff may prove the existence of a "custom or policy" in one of two ways. First, a pattern of unconstitutional conduct may be shown on the part of municipal actors or employees. *Id*. at 842. A pattern of conduct is necessary only where the municipal actors are *not* policymakers. Alternatively, it may be shown that a *final policymaker* took a single unconstitutional action. *Bolton*, 541 F.3d at 548.

### a.    *Pattern of Unconstitutional Conduct*

The district court concluded that Zarnow has not demonstrated a pattern of unconstitutional conduct by police officers. A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct. *Webster*, 735 F.2d at 842.

In an effort to establish a pattern, Zarnow invites this Court to rely on a series of inferences. The officers' testimony concerning the plain view doctrine was given several years after the incident giving rise to this action. During the intervening period, Zarnow alleges many unconstitutional searches of the same type must have taken place. No evidence of that was offered. There is no testimony that the plain view doctrine was misused in another case. Mere

No. 09-10313

"improbable inferences" and "unsupported speculation" are not proper summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

Zarnow asserts that the Chief Coughlin and the City effectively ratified the officers' unconstitutional conduct. Among the arguments is that during this litigation, the City has defended the constitutionality and propriety of the actions taken by its officers, despite the finding of a prior panel of this Court that the officers' actions violated the Fourth Amendment. Such a defense constitutes, so the argument goes, a ratification of the unlawful conduct of its officers.

Good faith statements made in defending complaints against municipal employees do not demonstrate ratification. *See Peterson v. City of Forth Worth, Tex.,* 588 F.3d 833, 852 (5th Cir. 2009). A "policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Id.* at 848 (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)).

Zarnow also suggests that Chief Coughlin may have incurred liability on behalf of the City by failing to supervise his subordinates during the search. To support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc). A supervisory official is liable if he demonstrates deliberate indifference to a plaintiff's constitutionally protected rights. *Id.* at 454.

Deliberate indifference is "more blameworthy than negligence" but less blameworthy than purposeful harm. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). The standard is "stringent" and requires that the supervisory actor disregarded a known consequence of his action. *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997).

Here, there was no deliberate indifference. Coughlin shared the errant view of the doctrine which caused Zarnow's constitutional deprivation.

10

Negligent misinformation is insufficient to establish supervisory liability. *See id.* Similarly, there is no evidence that Coughlin's failure to supervise the search rose above the level of negligent inaction. "Unintentionally negligent oversight" does not satisfy the deliberate indifference standard. *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 756 (5th Cir. 1993)(citation omitted).

> b.    *Single Instance of Unconstitutional Conduct by a Policymaker*

The court did not consider whether Chief Coughlin committed a single constitutional violation sufficient to confer liability on the City. This was because Zarnow did not allege in the district court that Chief Coughlin personally committed such a violation. Instead, the focus was on theories of ratification and supervisory liability.

For the first time on appeal, Zarnow argues that a single incident of unconstitutional conduct by a policymaker may impute liability to the City. The only citation to this rule in her appellate briefing appears in the argument that Chief Coughlin failed to supervise his employees. The brief does not assert that Coughlin was personally involved with the violation itself. Under questioning at oral argument, Counsel nevertheless extended this argument, claiming for the first time that Coughlin personally seized prohibited items from the house.

This argument was not made to the district court. We will not consider it, as it is made for the first time on appeal and is therefore waived. *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

> c.    *Failure to Train*

As a separate theory of municipal liability, Zarnow contends that the City had a policy of inadequate training of its police officers. "A municipality's failure to train its police officers can without question give rise to § 1983 liability." *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009) (citations omitted). To prevail on a "failure to train theory" a plaintiff must demonstrate: (1) that the municipality's training procedures were

No. 09-10313

inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question. *Id.*

Zarnow's initial brief does not reference any evidence concerning the procedures used to train the officers, the officers' qualifications, or direct references to the particular inadequacies of their Fourth Amendment training. Zarnow's only evidence that the training procedures were deficient is that the officers expressed an unlawful interpretation of the plain view doctrine. In order for "liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

Further, this Court has previously rejected attempts by plaintiffs to present evidence of isolated violations and ascribe those violations to a failure to train. *See generally Goodman v. Harris Cnty.*, 571 F.3d 388 (5th Cir. 2009). Here, the only training-related evidence in the record demonstrated that the City's training procedures complied with state law. We consider compliance with state requirements as a factor counseling against a "failure to train" finding. *See Conner v. Travis Cnty.*, 209 F.3d 794, 798 (5th Cir. 2000). Zarnow has not established that the City's training practices are inadequate. Because Zarnow cannot establish the first element of the "failure to train" test, we will not address the remaining ones.

*3.    Municipal Liability – Moving Force*

The district court did not reach the final element of the municipal liability analysis, which considers whether the allegedly unlawful seizure policy was the "moving force" causing Zarnow's constitutional deprivations. *See Piotrowski*, 237 F.3d at 578. We stop short in our analysis as well. Because we are affirming the court's finding that Zarnow has not established a "custom or policy" of the City, we too need not consider the moving force factor.

12

## B.    *Law-of-the-Case Doctrine*

Zarnow argues that the law-of-the-case doctrine should have prevented the district court from granting summary judgment. That argument is based on the fact that the district court denied the City's first motion for summary judgment on the basis that issues of fact existed concerning whether the City's search policy was the "moving force" underlying the unlawful seizures conducted at Zarnow's home. Following an appeal to this Court on issues of qualified immunity, the case was remanded. The parties again moved for summary judgment. This time, the district court granted the City's motion.

Zarnow contends that the district court could not properly grant summary judgment to the City on the same issues decided in the prior order. However, the law-of-the-case doctrine does not operate to prevent a district court from reconsidering prior rulings. "A court has the power to revisit prior decisions of its own . . . in any circumstance. . . ." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988). The doctrine "directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605, 618 (1983) (citations omitted). The law-of-the-case doctrine is a rule of convenience designed to prevent unnecessary reconsideration of previously decided issues. *See Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983). It is equally clear, though, that the rule "yields to adequate reason." *Id.*

Further, we have rejected the argument that the doctrine precludes a grant of summary judgment following a prior denial. An order denying summary judgment is interlocutory, and leaves the trial court free to "reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994).

No. 09-10313

Accordingly, we agree with the district court that Chief Coughlin is a policymaker for the City, but that Zarnow has not established a custom or policy sufficient to impose liability.  We AFFIRM.