# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 16, 2012

No. 11-50148

Lyle W. Cayce
Clerk

FRANK STOFFELS, on Behalf of the SBC Telephone Concession Plan and
All Others Similarly Situated; JAMES BELCHER, on Behalf of the SBC
Concession Plan and All Other Persons Similarly Situated; BURNIE JOE
DUNN, on Behalf of the SBC Concession Plan and All Other Persons
Similarly Situated; JACK GIULIANI, on Behalf of the SBC Concession Plan
and All Other Persons Similarly Situated; LINDA VILLAFANE, on Behalf of
the SBC Telephone Concession Plan and All Other Persons Similarly
Situated,

Plaintiffs - Appellants,

v.

SBC COMMUNICATIONS, INC.; SBC TELEPHONE CONCESSION PLAN;
AT&T, formerly known as SBC Communications, Inc.,

Defendants - Appellees.

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, CLEMENT, and GRAVES,[*] Circuit Judges.

CARL E. STEWART, Circuit Judge:

Frank Stoffels, James Belcher, Burnie Joe Dunn, Jack Giuliani, and Linda
Villafane, representing themselves and those similarly situated (collectively,
"Plaintiffs"), brought an enforcement suit against SBC Communications, Inc.,

---

[*] Judge Graves concurs in the judgment only.

No. 11-50148

SBC Telephone Concession Plan, and AT&T (collectively, "Defendants") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.    Plaintiffs alleged that Defendants' practice of offering reimbursements for telephone services to retirees who lived outside of Defendants' service region constituted a "pension plan" under ERISA.  Judge Justice entered an interlocutory order in which he found that the program of retirement benefits at issue here was a pension plan covered by ERISA, but he recused himself before entering final judgment.

Judge Rodriguez was assigned to the claims at issue here and to *Boos v. AT&T*, a case involving similar claims.  After ruling that the concession at issue in *Boos* was not a pension plan under ERISA, 704 F. Supp. 2d 600 (W.D. Tex. 2010), *aff'd*, 643 F.2d 127 (5th Cir. 2011), Judge Rodriguez reconsidered Judge Justice's interlocutory order with respect to Plaintiffs' claims in this case.  He concluded that the program of retirement benefits was not a pension plan under ERISA, and he then entered final judgment.  Because we conclude that Judge Rodriguez did not abuse his discretion by revising Judge Justice's interlocutory order, we AFFIRM the district court's judgment.

**I.**

On January 1, 1984, AT&T, the company that controlled most of the American market for telephone-related services, was required by court order to divest into AT&T Corporation, which continued to provide long-distance telephone services, and seven Regional Bell Operating Companies ("RBOCs"), which provided local telephone services.  Prior to the divestiture, AT&T started the practice of offering discounted telephone services to employees and retirees. Following the divestiture, the RBOCs continued AT&T's practice of providing discounted telephone services to employees and retirees.

Defendant SBC Communications began as a holding company for Southwestern Bell Telephone, one of the RBOCs.  Through acquisitions, SBC

No. 11-50148

Communications also acquired three other RBOCs and AT&T Corporation, and, after acquiring AT&T Corporation, changed its name to AT&T, Inc.

In 2005, Plaintiffs, all retired employees of SBC or one of its subsidiaries, brought suit against Defendants. Plaintiffs challenged Defendants' alterations to the program that provided discounted telephone services to Bell retirees. The program mostly applied to employees and retirees who lived within range of Defendants' services (the "in-region retiree concession"), for whom it was structured as a discount on Defendants' telephone services. Since not all employees lived within range of Defendants' services, Defendants also offered reimbursement for the services of Defendants' competitors to employees and retirees whose residences were not served by Defendants (the "OOR retiree concession").

Before 2000, each subsidiary had a separate contract with a third-party administrator to operate the OOR retiree concession.[1] Beginning in 2000, Defendants transferred all OOR retiree concessions to Acordia, a company that administers retiree benefits. On February 1, 2003, a $25 per month cap was imposed on the OOR retiree concession. In July 2005, the OOR retiree concession was converted to a block of 600 minutes of free long distance that was provided annually by Defendants, which Defendants asserted was equivalent in value to the previously offered $25 per month. Beginning in 2000, Defendants also consolidated the in-region retiree concession programs offered by its various subsidiaries. Instead of the previous package of free local telephone service and discounted long-distance telephone service, in-region retirees received SBC@home, which enabled in-region retirees to pay a discounted amount for a package of services that included local telephone service, internet access, wireless service and long distance service.

---

[1] These differences are not relevant to any of the issues Plaintiffs raise on appeal.

No. 11-50148

When Defendants altered the OOR retiree concession, Plaintiffs filed suit. They summarized their claims as follows:

> The fundamental premise of this lawsuit is that by informing employees that they would receive the Telephone Concession when they retired with a Service or Disability Pension, and by providing the Telephone Concession to retirees, Defendant SBC (and its predecessors) have established and maintained a "defined benefit plan," the SBC Telephone Concession Plan, within the meaning of [E]RISA § 3(35), 29 U.S.C. § 1002(35). By establishing and maintaining such a plan, Defendant SBC became responsible for compliance with a myriad of statutory and regulatory obligations that apply to such plans under the provisions of ERISA. At all times, however, Defendant SBC (and its predecessors) has failed to comply with any of these requirements with respect to the SBC Telephone Concession Plan.

Plaintiffs alleged that because the OOR retiree concession was a pension plan under ERISA, Defendants' decision to reduce the benefits offered in the telephone concession violated the anti-cutback provision of ERISA § 204(g), 29 U.S.C. § 1054(g).

Plaintiffs contended that the OOR retiree concession was sufficiently distinct from the in-region retiree concession that it amounted to a separate pension plan for purposes of ERISA. The parties agreed to hold a bifurcated trial, with Phase 1 devoted to whether the concession was an "employee benefit plan" pursuant to ERISA and Phase 2, if necessary, devoted to the remedy available to plaintiffs.

On November 26, 2007, Judge Justice empaneled an advisory jury to hear Phase 1 of the trial, and then issued an interlocutory memorandum opinion on May 21, 2008. In his interlocutory opinion, he found, inter alia, that one of the purposes of the OOR retiree concession was to provide retirement income; that the OOR retiree concession for retirees was separate from the OOR retiree concession for current employees; and that the OOR retiree concession was

4

No. 11-50148

separate from the in-region retiree concession.  Based on these findings, Judge Justice ruled that the OOR retiree concession constituted a pension plan under ERISA.

Before Phase 2 of the trial was held, Judge Justice recused himself.  At the time he recused himself, he had not entered final judgment.  The case was then transferred to Judge Rodriguez, who was also assigned to *Boos v. AT&T*, which involved a similar benefit program offered by another RBOC.  Judge Rodriguez ruled in *Boos* that the OOR retiree concession and in-region retiree concession at issue there were the same program for purposes of ERISA, and that this program did not constitute a pension plan under ERISA.[2]  Judge Rodriguez reconsidered Judge Justice's ruling pursuant to Federal Rule of Civil Procedure 54, explaining that doing so was necessary to maintain consistency with his decision in *Boos*.  He concluded that the material facts here were the same as the material facts in *Boos*.  Specifically, he determined, contrary to Judge Justice, that the in-region retiree concession and OOR retiree concession were governed by the same policies; that they were part of the same benefit program; and that the OOR retiree concession was not intended to provide retirement income. Accordingly, Judge Rodriguez ruled that the OOR retiree concession here, like the OOR retiree concession in *Boos*, was not a pension plan under ERISA.

## II.

On appeal, Plaintiffs contend that Judge Rodriguez abused his discretion by substituting his findings for Judge Justice's.  They argue that Judge Rodriguez did not comply with the law of the case doctrine when he overturned the findings of Judge Justice.  Plaintiffs further contend that their claims are

---

[2] We subsequently affirmed Judge Rodriguez's ruling in *Boos*.  643 F.2d at 127.  Our decision in *Boos* followed Judge Rodriguez's ruling in this case.

No. 11-50148

distinguishable from the claims at issue in *Boos*. After laying out the governing law, we address each of these contentions.

### A.

We review a district court's order vacating a previous interlocutory order for abuse of discretion. *Zimzores v. Veterans Admin.*, 778 F.2d 264, 267 (5th Cir. 1985).

### B.

"ERISA does not regulate all benefits paid by an employer but only those paid pursuant to an 'employee benefit plan.'" *Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 344 (5th Cir. 2003). An employee benefit plan is a plan which is an employee welfare benefit plan ("welfare plan") or an employee pension benefit plan ("pension plan") or both. Plaintiffs contend that the OOR retiree concession is a pension plan.

ERISA defines "pension plan" in the following way:

> any plan, fund or program . . . established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program (i) provide[s] retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

29 U.S.C. § 1002. In *Boos*, we affirmed Judge Rodriguez's conclusion that BellSouth's practice of providing discounted telephone service to employees and retirees who lived within a region that BellSouth served, and reimbursement for telephone services of BellSouth's competitors to retirees who lived outside BellSouth's service region, did not constitute a pension plan under ERISA. 643 F.3d at 127. We held that the in-region retiree concession and the OOR retiree concession should be considered as one benefit program for the purpose of deciding whether they are ERISA plans. *Id.* at 133. We explained that whether a benefit plan is a single plan or multiple plan for purposes of ERISA is a

question of employer intent. *Id.* at 132. Several factors are relevant to this analysis, we wrote, including "whether the plan is located in one or multiple plan documents and whether those documents show an intent to create a single plan or multiple plans"; "whether the benefits are separately funded"; "whether the offered benefit is the same"; and whether the plans are separately administered. *Id.* In holding that BellSouth's retiree concessions amounted to one plan, we cited the fact that the concessions were governed by the same documents; that they offered the same benefits to in-region retirees and OOR retirees; that in-region and OOR retiree concessions were drawn from the same funds; and that retirees who moved from in-region to out-of-region, or vice versa, could transfer between the respective benefit programs. *Id.* at 132-33. Thus, we held that even though the plans were separately administered, there was no genuine issue of material fact that the Concession was a single plan with respect to all retirees. *Id.* at 133.

## C.

To address Plaintiffs' contentions, we begin by determining what authority Judge Rodriguez was acting under when he revised Judge Justice's findings. We then analyze what degree of deference he owed the findings of Judge Justice. Because we conclude that Rule 54(b) provided Judge Rodriguez with authority to revise Judge Justice's findings, we last consider whether the Concessions at issue here are materially different from the concessions at issue in *Boos*.

### i.

We must first address what authority Judge Rodriguez had for substituting his findings for Judge Justice's interlocutory findings. We hold that Federal Rule of Civil Procedure 54(b) authorized Judge Rodriguez to vacate Judge Justice's interlocutory findings and enter judgment based on his own findings.

No. 11-50148

Rule 54 provides district court judges with authority to vacate their own findings. Fed. R. Civ. P. 54(b) ("Any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). Here, nobody disputes that Judge Justice's interlocutory memorandum opinion was an "order or other decision" that "adjudicate[d] fewer than all the claims or the rights and liabilities of fewer than all the parties . . . ." Judge Rodriguez's order then "revised" Judge Justice's order "before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." The language of Rule 54 does not distinguish between, on the one hand, a situation where a trial judge revises his own order, and, on the other hand, a situation where a second judge revises the earlier order of a previous judge. Rule 54 governs Judge Rodriguez's decision to revise Judge Justice's order.

We reject Plaintiffs' argument that Federal Rule of Civil Procedure Rule 52 has any force here. Rule 52(a)(6) provides that "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witness's credibility." Fed. R. Civ. P. 52(a)(6). The text of Rule 52(a)(6) limits the rule to instances in which a "reviewing court" is considering the findings of a "trial court." "Reviewing court" refers to an appellate court that is assessing an inferior court's findings. *See, e.g.*, Fed. R. Civ. P. 52 advisory committee notes (1937) (describing "appellate review"). Here, Judge Rodriguez was acting as a "trial court" judge, not a "reviewing court" judge, so Rule 52 does not apply.

**ii.**

8

No. 11-50148

Though they acknowledge that Rule 54 applies here, Plaintiffs contend that the law of the case doctrine prohibited Judge Rodriguez from revising Judge Justice's order. We reject this argument. While Judge Rodriguez's discretion was properly guided by the law of the case doctrine, the doctrine did not limit his authority to revise Judge Justice's findings.

Generally, under the law of the case doctrine, courts show deference to decisions already made in the case they are presiding over.[3] The law of the case doctrine, however, "does not operate to prevent a district court from reconsidering prior rulings." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010). Our precedent establishes that "[a] trial court [is] free to reconsider and reverse [interlocutory orders] for any reason it deems sufficient, even in the absence of new evidence or an intervening change or in clarification

---

[3] Courts disagree about whether the law of the case doctrine applies to situations such as this one. Our court has written that "the law of the case doctrine . . . encompasses situations in which one judge has rendered an order or judgment and the case is then transferred to another judge." *United States v. Keefe*, 128 F.3d 885, 891 (5th Cir. 1997). Some of our sister circuits have concluded that the law of the case doctrine does not apply to a district court's reconsideration of interlocutory orders. *See Filebark v. U.S. Dep't of Trans.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009); *Elephant Butte Irr. Dist. of New Mex. v. U.S. Dep't of Interior*, 538 F.3d 1299, 1306 (10th Cir. 2008); *but see Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("We have limited district court's reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case . . . .").

These differing approaches reflect differences in terminology more than differences in practice. The law of the case doctrine is not a command that trial judges never depart from previous rulings. Instead, it is a flexible doctrine, the application of which differs depending on, for instance, the characteristics of the issue that is being considered and the relationship between the successor judge and the prior judge. In every case, however, "[a] judge convinced that an earlier ruling was wrong has, must have, authority to reconsider and rectify the error." 18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4478.4 (2002). When a successor judge is reviewing another judge's interlocutory order, the law of the case doctrine requires only that the successor judge respect principles of comity when considering issues that have already been decided. Thus, while the law of the case doctrine applies here, the only practical effect of the doctrine in this circumstance was to require Judge Rodriguez to exercise his discretion in a way that "[strikes a] balance . . . between stability and reaching the right decision." *Id.* As we explain, he did so properly.

9

of the new law." *Id.* Further, when a successor judge replaces another judge, "[t]he successor judge has the same discretion as the first judge to reconsider [the first judge's] order." *Abshire v. Seacoast Products, Inc.*, 668 F.2d 832, 837-38 (5th Cir. 1982). In exercising this discretion, successor judges should, in accordance with values of comity and predictability, carefully and respectfully consider the conclusions of prior judges before deciding to overturn them. *See, e.g.*, 18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4478.4 (2002). But a successor judge may overrule a previous judge's order as long as the successor judge has a "reason it deems sufficient." *Zarnow*, 614 F.3d at 171.

Judge Rodriguez's exercise of discretion in this case falls within the scope of Rule 54(b). Judge Rodriguez wrote that he fully reviewed the transcripts of the trial and accepted the credibility determinations of Judge Justice before revising Judge Justice's ruling. Judge Rodriguez disagreed, however, with the legal significance Judge Justice ascribed to his factual determinations. After Judge Rodriguez's ruling in *Boos*, the conclusions of Judges Justice and Rodriguez treated similarly situated litigants differently by resolving substantially similar claims differently.[4] Seeking consistent treatment of similarly situated litigants is a proper basis for the exercise of discretion under Rule 54(b). Accordingly, Judge Rodriguez was permitted to revise Judge Justice's ruling if he is correct that the material facts here are substantially the same as the facts we considered in *Boos*, in which we affirmed the judgment of Judge Rodriguez that the benefit program was not a pension plan under ERISA.

### iii.

---

[4] Contrary to plaintiffs' intimations, it does not matter that we had not yet affirmed Judge Rodriguez's order in *Boos* at the time Judge Rodriguez revised Judge Justice's order. Even before his ruling in *Boos* was affirmed, Judge Rodriguez had a duty to apply the same method of analysis he applied in *Boos* to the substantially similar facts in this case.

No. 11-50148

Plaintiffs contend that, even if Judge Rodriguez had authority to revise Judge Justice's findings, it was error to do so because of distinctions between the programs here and in *Boos*. Plaintiffs' attempts to distinguish the OOR retiree concession at issue here from the OOR retiree concession at issue in *Boos*, however, are unavailing. The programs in the two cases have the same essential structure.[5] In both cases, RBOCs provided discounted telephone services to employees who lived in region of their services. These concessions derived from a common source, the telephone concessions offered by AT&T prior to the forced divestiture of the RBOCs. To ensure that employees who lived out of region received similar benefits to those received by in-region employees, the RBOCs in both cases reimbursed out-of-region employees for competitors' telephone services. In both cases, a plaintiff class then contended that the OOR plan for retirees was a pension plan governed by ERISA. Finally, in both cases, Judge Rodriguez ruled that the OOR concession and the in-region concession were actually part of the same program, which program was not a pension plan under ERISA.

None of the differences cited by plaintiffs justify a departure from our decision in *Boos*. Plaintiffs point to two specific factual differences that they contend distinguish the concessions at issue in this case from the concessions at

---

[5] Plaintiffs make much of a document entitled "Out-of-Area Concession Eligibility Rules," which they contend superseded previous documents and created a separate pension plan under ERISA for OOR retirees. Judge Rodriguez found, however, that "[t]his document was simply a summary of the different eligibility criteria for Acordia to use. It was not a separate policy document evidence an intent to create a benefit plan for OOR Retirees . . . ." As Judge Rodriguez explains in his order, "the document itself states under 'Purpose' that 'SBC provides concession service for retirees who live within and outside the SBC affiliate territory if they meet certain eligibility requirements.'" This quotation supports Judge Rodriguez's conclusion that the in-region and OOR concession were part of the same program of benefits. Thus, we are not convinced that Judge Rodriguez abused his discretion in making this finding.

issue in *Boos*.[6]  Plaintiffs argue that here, unlike in *Boos*, OOR retirees must have established service outside the range of SBC services to qualify for the OOR concession.  But as Judge Rodriguez wrote, this evidence tends to show that the "in-region Concession was the preferred, default benefit for retirees," and that OOR retiree concession was introduced only as a stop-gap method of ensuring retirees who could not receive this fringe benefit received a comparable benefit. Plaintiffs also argue that, unlike in *Boos*, the value of the OOR retiree concession at issue here is not exactly the same as the value of the in-region concession. The program here is structured such that the in-region beneficiaries as of 2000 received a package of telephone and internet services that they paid a small amount for, while, as of 2003, the out-of-region beneficiaries received a credit of $25 per month for telephone services.  This distinction does not require this case to be resolved differently from *Boos*.  Whether two programs offer the same benefits is one of the several factors courts consider when assessing whether two programs should be considered as one pension plan.  *Boos*, 643 F.3d at 132-33. Judge Rodriguez found in this case that the differences between the in-region retiree concession and the OOR retiree concession result from "ease of administration and cost factors," not the Defendants' intent that the in-region retiree concession and OOR retiree concession constitute two separate plans. Further, he found that when Defendants began to offer the two concessions, they

---

[6] Plaintiffs also argue that a number of factual findings of Judge Justice distinguish this case from *Boos*.  Specifically, plaintiffs cite to Judge Justice's findings that "(1) SBC maintained the OOR Retiree Concession and had ultimate control over and responsibility for it; (2) the OOR Retiree Concession was 'structured separately from other segments of the telephone discount;' (3) OOR Retiree Concession provided retirement income; and (4) OOR Retiree Concession 'was intended to provide retirement income.'"  These findings of Judge Justice, however, have been supplanted by the judgment entered by Judge Rodriguez. Accordingly, we are not reviewing the interlocutory factual findings of Judge Justice.  In any event, the findings of Judge Justice are legal conclusions contrary to the legal conclusions we affirmed in the substantially similar case of *Boos*.  We therefore reject this line of argumentation.

No. 11-50148

offered benefits that were designed to be roughly equal.  We see no basis for unsettling these findings.  Given the other evidence that the benefits for OOR retirees and in-region retirees were designed to constitute one program, the fact that the OOR retiree concession developed over time such that OOR retirees received a lesser benefit than in-region retirees does not establish that the Defendants intended the concessions to be two different plans.

In sum, we agree with Judge Rodriguez that, for ERISA purposes, the concessions at issue here and in *Boos* are materially the same.  Judge Rodriguez therefore did not abuse his discretion by revising Judge Justice's findings to correspond with his findings in *Boos*.

## III.

For these reasons, we AFFIRM the district court's judgment.

13