# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 13, 2026

Lyle W. Cayce
Clerk

———————

No. 25-40126

———————

Priscilla Tryon Cambric,

*Plaintiff—Appellant*,

*versus*

City of Corpus Christi,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:24-CV-41

———————————————————————

Before Richman, Higginson, and Oldham, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

Plaintiff-Appellant Priscilla Tryon Cambric sued the City of Corpus Christi (the "City") and two City employees, alleging that defendants selectively enforced the City's building code regarding disrepair, in violation of the Fourteenth Amendment's Equal Protection Clause. Specifically, Plaintiff pleaded a "class of one" equal protection violation under 42 U.S.C. § 1983. The district court dismissed her complaint for failure to state a claim. For the reasons explained below, we affirm the district court's dismissal.

No. 25-40126

I.

Plaintiff purchased the property at issue in 2003.[1]  The building, constructed around 1940, was known as the Ebony Recreation Spot and, at other times, the Skylark Club and the Fabulous Lounge.  It was also "host to innumerable luminaries in the Black music and entertainment space."

Prior to this lawsuit, the City's Code Enforcement Division issued a number of citations on the property and requested Plaintiff's appearance before the Building Standards Board (the "Board") multiple times.  The City's code-enforcement staff, citing defects with the roof and structural issues with the building, found Plaintiff's property to be "substandard" and ultimately recommended that the Board vote for demolition.  Plaintiff consistently advocated for her plan to pursue historical preservation of the property.

The Board set a final hearing date on September 28, 2023, despite Plaintiff's counsel's request for a continuance due to work travel.  At this final hearing, the Board heard from Tracey Cantu, who was the Assistant Director of Development Services, Code Compliance Division, and Al Raymond, the Director of Development Services.  Cantu and Raymond advocated, as they had done before, for the demolition of the building.  In the absence of Plaintiff and her counsel, the Board voted that day to recommend demolition of the building.

Plaintiff appealed this decision, emphasizing "the importance of preserving such an important cultural landmark in this community, and specifically to the Black community."  The City then modified and

_____

[1] In the motion to dismiss posture, we are cabined to the facts alleged in the complaint, which we assume are true and construe in the light most favorable to the plaintiff.  *See True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009).

temporarily suspended its prior demolition order from September and now required Plaintiff to erect a fence around the property by January 24, 2024, and to board up and secure the first floor to prevent entry to the property.

Thereafter, on January 25, 2024, Cantu notified Plaintiff that the City found her to be noncompliant with the conditions for suspending demolition, specifically that the perimeter fencing was insufficient. The City gave Plaintiff 30 days to demolish the building, or else the City would take further action. Plaintiff filed suit against the City, Cantu, and Raymond in state court to prevent demolition. Plaintiff was granted a temporary restraining order against any demolition to her property by the state court, which the parties have agreed to continue. Defendants removed the case to the Southern District of Texas on February 15, 2024.

Plaintiff alleged a § 1983 claim against all defendants, claiming they violated the Fourteenth Amendment's Equal Protection Clause by selectively enforcing the City's building code. As to the City, Plaintiff alleged that it was liable for its "policies, customs, and/or practices" of selective enforcement under a theory of municipal liability. Plaintiff pled these allegations in two separate counts: Count One addressed the substantive Fourteenth Amendment violation under § 1983, and Count Two was limited to the facts relating to municipal liability for the same alleged Fourteenth Amendment violation.

Defendants moved to dismiss Plaintiff's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Following an initial pretrial conference, wherein the district court expressed concerns with the sufficiency of the pleadings, Plaintiff submitted her first amended complaint on August 5, 2024. Plaintiff's amended complaint did not address the deficiencies the district court identified and instead included allegations substantially similar to those in her original complaint.

Defendants again filed motions to dismiss the complaint for failure to state a claim under Rule 12(b)(6), to which Plaintiff did not file a response.

In February of 2025, the district court dismissed Plaintiff's complaint for failure to state a claim, finding that Plaintiff had not adequately pleaded a substantive constitutional violation, as required to sustain her claims against both the individual defendants and the City. Finding no constitutional violation, the district court did not reach whether Plaintiff had adequately pled facts required to impose municipal liability on the City.

Plaintiff timely noticed her appeal. Her opening brief did not address or challenge the dismissal of her claims as to Cantu and Raymond, so the parties agreed to dismiss those defendants from the appeal. The City is the only remaining defendant and responded as Appellee in the present appeal.

## II.

"We review a Rule 12(b)(6) dismissal *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Jackson v. City of Hearne*, 959 F.3d 194, 200 (5th Cir. 2020) (quotation marks omitted). Dismissal is appropriate when the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face" and to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Moreover, "the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Favre v. Sharpe*, 117 F.4th 342, 346 (5th Cir. 2024) (quotation marks omitted).

While we review the dismissal de novo, using the same standard as the district court in consideration of the Rule 12(b)(6) motion, we are not constrained to the district court's approach or reasoning. We may "affirm a district court's dismissal of a suit for failure to state a claim 'on any basis

supported by the record.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780–81 (5th Cir. 2007)).

## III.

Because Plaintiff agreed to discontinue her appeal as to Cantu and Raymond, we review Plaintiff's only remaining claim: a § 1983 claim against the City for selective enforcement in violation of the Equal Protection Clause.

As a threshold matter, to hold the City liable, Plaintiff must have adequately pleaded facts to support a theory of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). There, the Supreme Court held that a local government entity may be sued under § 1983 for the actions of its employees only if the employees acted in accordance with an official "policy or custom" of the municipality. *Id.* at 694. "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of the constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)); *see also Monell*, 436 U.S. at 691 (requiring plaintiffs to prove that an "action pursuant to official municipal policy of some nature caused a constitutional tort"). We begin by addressing the first requirement.

Our court has identified three routes to establishing an "official policy" for the purposes of municipal liability. First, "a policy statement formally announced by an official policymaker." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010). Second, a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v.*

*City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). And third, a single unconstitutional act by a final policymaker. *Zarnow*, 614 F.3d at 169.

Plaintiff did not plead that a written policy statement or "formal directive" controls the City's selective enforcement. *Id.* She also did not plead a single unconstitutional act by a final policymaker as a basis for her claim. On appeal, Plaintiff raises this issue for the first time. The City contends, correctly, that Plaintiff forfeited this issue by failing to plead it in her complaint or raise it before the district court. With no pleading to support this contention, we find that Plaintiff forfeited this issue and do not consider it further. *Id.* at 170 (citing *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007)).

Thus, the only route Plaintiff alleged in her complaint—and thus the only route before us—is that the City, acting through its agents (namely, Raymond), "has a pattern, practice, and custom of selective enforcement, demonstrated by its non-enforcement on many properties throughout the City and seemingly insatiable enforcement on Plaintiff's property." Thus, we consider whether there is a sufficiently pleaded custom or pattern that rises to the level of an official policy.

"A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Id.* at 169 (citing *Webster*, 735 F.2d at 842); *see also Peterson*, 588 F.3d at 851 ("A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" (quoting *McConney v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989))).

Plaintiff pleaded that the City has (or ratified) policies, customs, or practices that include:

a. Selective enforcement of allegedly substandard properties.
b. Selective allowance of certain historic properties to have adequate time to seek historic preservation status, while not affording others the same reasonable time to seek such status.
c. Selective application of criteria for demolition.

Beyond this general allegation of a selective enforcement policy, Plaintiff provides only one example to support her claim. She discusses the City's treatment of the Ritz Theatre project and its historical restoration, which the City allegedly supported or, at the very least, did not attempt to bring enforcement actions against for disrepair. This is a singular counterpoint to Plaintiff's experience with the City and the Board or, as the City contended in its motion to dismiss, "a single instance of arguably uneven enforcement." This single instance cannot support an actionable custom for municipal liability purposes. Additionally, as the City notes, at the Board Meeting in September of 2023,[2] when Plaintiff's property was discussed, four other properties were considered for demolition, three of which were also voted to be demolished. Plaintiff does not address nor argue that those building owners received different treatment from the City like she did.

Thus, Plaintiff's factual allegations of a pattern condense to an "isolated" incident. *See Peterson*, 588 F.3d at 850–51 ("Where prior incidents are used to prove a pattern . . . a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" (quoting *Piotrowski*, 237 F.3d at 582)). But "a single incident doesn't establish a

---

[2] The district court considered the minutes from this Board Meeting in its order on the motion to dismiss. This consideration was valid at the 12(b)(6) stage because the minutes were referenced in the complaint and attached to the motion to dismiss. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

custom or policy." *Jackson*, 959 F.3d at 204. Accordingly, Plaintiff has not pleaded factual allegations sufficient to show a pattern or practice that satisfies the requirements for municipal liability under § 1983.

While we agree with Plaintiff that historic preservation is an important and vital task for our Nation's history, our inquiry begins and ends with whether the pleadings sufficiently support the allegations. Even if this were a matter of "uneven" enforcement, it falls short of demonstrating a pattern of constitutional violations. As such, we find that Plaintiff did not sufficiently plead a municipal policy or custom, so she has failed to state a claim against the City under the requirements for municipal liability. Because Plaintiff's pleadings do not satisfy this requirement, we need not address the substance of Plaintiff's constitutional claim as well. *See Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 863 (5th Cir. 2012) (en banc); *G.M. ex rel. Lopez v. Shelton*, 595 F. App'x 262, 266 (5th Cir. 2014).

## IV.

For the foregoing reasons, we AFFIRM the district court's order granting the City's motion to dismiss.

No. 25-40126

ANDREW S. OLDHAM, *Circuit Judge*, concurring:

I join the majority opinion in full. I write separately to clarify our *Monell* precedents.

Priscilla Tryon Cambric sued the City of Corpus Christi and two City employees for enforcing the City's building code against her property. Her complaint brings a "class of one" selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment. She seeks to hold the City liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). She claims that the City had "policies, customs and/or practices in place" that encouraged selective enforcement of the code against historic, minority-owned properties. ROA.957.

To plead a *Monell* claim, plaintiffs must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) [that] was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). A plaintiff can satisfy the "policy or custom" requirement in three ways. First, she can show that the City's decisionmaker "officially adopted and promulgated" a "policy statement, ordinance, regulation, or decision" that violates her constitutional rights. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). Second, she can allege that a "persistent, widespread practice of city officials," though "not authorized by officially adopted" policy, is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Ibid.* Finally (and relevant here), if the plaintiff has neither proof of a formal policy nor a *pattern* of constitutional violations, she may allege that a "*final policymaker* took a single unconstitutional action." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010). I call this third option the "single incident" approach.

Traditionally, plaintiffs who pursue the "single incident" approach can establish municipal liability only in "very narrow" circumstances. *Littell v. Hou. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018). That's because it's difficult to infer from a single event that a municipality is not just negligent, but deliberately indifferent to its employees' unconstitutional conduct. So we only allow "single incident" claims to move forward if the incident is "proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003) (quotation omitted). We are willing to hold a municipality liable in those situations because "it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence." *Ibid.*

Recently, we departed from the traditional rule. *See Hershey v. City of Bossier City*, 156 F.4th 555 (5th Cir. 2025) ("*Hershey I*"). In *Hershey*, the plaintiff was arrested for distributing leaflets on a sidewalk outside a private events center. There was "no allegation" that Bossier City officers had "ever previously" engaged in viewpoint discrimination "against someone engaging in free exercise of religion or free speech." *Id.* at 567 (Richman, J., concurring in part and dissenting in part). Nor was it "highly predictable" that officers would have "recurring encounters with individuals paid to distribute literature outside a large, ticketed event." *Ibid.* But because the officers received "no training whatsoever . . . regarding the application of the First Amendment," Hershey's arrest was enough evidence to state a claim that the City was deliberately indifferent. *Id.* at 561 (Ho, J., concurring).

After reading *Hershey I*, one might think we are duty-bound to hold that Cambric's *Monell* claim survives Rule 12(b)(6). After all, a single incident should be enough to prove that the City was deliberately indifferent, even if "the *ex ante* risk of a constitutional violation was infinitesimal." *Hershey v. City of Bossier City*, 165 F.4th 292, 305 (5th Cir. 2025) ("*Hershey*

No. 25-40126

*II*") (OLDHAM, J., dissenting from the denial of rehearing en banc). And here, Cambric (at least sort of) alleges that the City's enforcement of the building code against her proves the City was deliberately indifferent. Her complaint states that the City's policymaker, Director Al Raymond, and his staff "were all deliberately indifferent to the natural byproducts" of enforcing the building code against her property, but not other white-owned properties in the area. ROA.957. So you might reasonably think that under *Hershey*, that "single incident" of selective enforcement would be enough to get to discovery.

But applying *Hershey I* here would wrongly extend that precedent "beyond its context." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 396 (2024). *Hershey I* only allows a plaintiff's *Monell* claim to survive a motion to dismiss on a failure-to-train theory, 156 F.4th at 561 (HO, J., concurring), not a theory that City policymakers selectively enforced a statute or ordinance, ROA.957. The policymaker must have provided "no training whatsoever with respect to the relevant constitutional duty," and that failure to train must have "caused the violation in question." *Hershey I*, 156 F.4th at 561 (HO, J., concurring) (quotation omitted). And *Hershey I* only applies when officers receive "literally zero training" on the "application of the First Amendment." *Ibid.* (quotation omitted).[*]

---

[*] There are other reasons to be wary of extending *Hershey* to new contexts. *Hershey I* held the plaintiff stated a claim under *Monell* but granted qualified immunity to the officers because circuit precedent apparently required that result. 156 F.4th at 559–60 (HO, J., concurring). We had a chance to fix that deeply inconsistent result, but the panel defeated the en banc rehearing effort. *Compare Hershey II*, 165 F.4th at 293–304 (HO, J., concurring in the denial of rehearing en banc), *with id.* at 304–09 (OLDHAM, J., dissenting from the denial of rehearing en banc). After the en banc vote failed, one panel member then tried and failed to grant *panel* rehearing to deny qualified immunity. *Hershey v. City of Bossier City* ("*Hershey III*"), 163 F.4th 976, 977 (5th Cir. Jan. 13, 2026) (HO, J., concurring). *Hershey III* is bizarre on at least three levels. First, the panel apparently was bound by precedent for *Hershey I* but then somehow became unbound for *Hershey III*? Second, if the correct answer

No. 25-40126

Thus, *Hershey* is inapplicable here. With these observations, I concur.

_____

was to deny qualified immunity, why not vote for en banc rehearing? And third, *Hershey III* apparently was issued as a 1–1 quorum decision. *See id.* at 976 n.1 (per curiam) (noting JUDGE DENNIS did not participate); 28 U.S.C. § 46(d) (quorum). If the vote was tied 1–1, why not allow a third judge to break the tie? And if that wasn't bizarre enough, the panel then issued its mandate with *yet another* opinion. *Hershey v. City of Bossier City*, No. 21-30754 (5th Cir. Feb. 5, 2026), ECF 140 (HO, J., statement respecting issuance of the mandate) ("*Hershey IV*"). I have searched in vain for another example of an opinion attached to the mandate like this. And the issuance of a mandate is a ministerial task accomplished by the panel and the clerk's office. *See* FED. R. APP. P. 41; 5TH CIR. R. 41 I.O.P. So why pretend that it was circulated to the court for an en banc vote and that the court broke "its word" by allowing the mandate to issue? *See Hershey IV*, ECF 140, at 2 (HO, J., statement respecting issuance of the mandate). All a long way of saying: relying on *Hershey* here would invite confusion in more ways than one.