# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40311

United States Court of Appeals
Fifth Circuit

**FILED**

January 19, 2017

Lyle W. Cayce
Clerk

REBECCA BOWDEN,

> Plaintiff - Appellant

v.

JEFFERSON COUNTY, TEXAS; NICK SALEME,

> Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:14-CV-287

Before DAVIS, DENNIS, and SOUTHWICK, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:*

Plaintiff-Appellant Rebecca Bowden appeals the district court's grant of Jefferson County, Texas' motion for summary judgment dismissing her First and Fourteenth Amendment claims under 42 U.S.C. § 1983. Bowden brought suit against newly elected Constable Nick Saleme, in his official capacity, and the County for her constructive termination from her job as Chief Deputy

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-40311

Constable. Because Constable Saleme is not a policymaker for the County, Bowden's § 1983 claims must fail. We AFFIRM.

I.

Nick Saleme defeated incumbent Charles Wiggins in the November 2012 election for Jefferson County, Texas Precinct 1 Constable. Bowden served as the Chief Deputy Constable under Wiggins, and had previously served as a deputy for two prior constables.

Bowden alleged that one week after the election, Saleme and Wiggins spoke on the telephone and Wiggins allowed Bowden and several other employees to listen to the call over speakerphone without Saleme's knowledge. Bowden alleged that during that phone call Saleme said that he was going to terminate everyone in the Precinct 1 Constable's office because they supported Wiggins during the election. Other employees who listened in on the call also testified that they believed Saleme "made it clear that he was going to terminate everyone in the office" because of their "political loyalties" to Wiggins. Saleme disputed these statements and claimed that he said that he wanted to "bring in his own people."

After that purported phone call, Bowden contacted the director of the Jefferson County Human Resources Department who allegedly told her that the current constable's office staff would no longer be on the payroll as of January 1, 2013. Bowden said she believed her options were to retire or be fired, so on November 19, 2012, she signed and filed the necessary documents to retire effective December 31, 2012. When Saleme took office on January 1, 2013, he did not retain any of his predecessor's staff.

Bowden filed suit in state court on February 28, 2013, seeking a declaratory judgment that Saleme, in his official capacity, and Jefferson County violated her rights under the Texas constitution. Later, she amended her petition to assert First and Fourteenth Amendment violations under 42

2

No. 16-40311

U.S.C. § 1983 against the County and Saleme, in his official capacity, for her constructive termination from the Constable's office.  Defendants removed the case to the district court based on federal question jurisdiction and moved for summary judgment on the § 1983 claims.

Finding Bowden failed to raise a genuine issue of material fact, the district court granted summary judgment in favor of the County and Saleme, in his official capacity, on Bowden's § 1983 claims and remanded the remaining state constitutional claims back to the Texas state court.

## II.

We review a grant of summary judgment *de novo*, applying the same standard as the district court.[1]  The moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[2]  The non-moving party must show that summary judgment is inappropriate by setting out facts that show the existence of a genuine issue of material fact.[3]

## III.

To sustain a municipal liability action under 42 U.S.C. § 1983 for a violation of constitutional rights, a plaintiff must present "proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."[4]

Bowden does not allege that Saleme's refusal to retain her as a deputy constable was pursuant to an official policy of Jefferson County.  So our

---

[1] *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003) (citing *Dickerson v. Bailey*, 336 F.3d 388, 394 (5th Cir. 2003)).

[2] FED. R. CIV. P. 56(c).

[3] *Rivera*, 349 F.3d at 247 (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[4] *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).

resolution of this case narrows to whether Constable Saleme is a policymaker with "final policymaking authority" for Jefferson County.[5]    "[A] local government is liable under § 1983 for its policies that cause constitutional torts," and these policies "may be set by the government's lawmakers, 'or by those whose edicts or acts may fairly be said to represent official policy.'"[6] Therefore, "[a] court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'"[7]    And this inquiry, whether a particular individual is a final policymaker for the County, is a matter of state law.[8]

> Under Texas law, a policymaker must
>
> be one who "takes the place of the governing body in a designated area of city administration," and who (1) decides the goals for a particular city function, (2) devises the means of achieving those goals, (3) acts in the place of the governing body in the area of delegated responsibility, and (4) is not supervised except as to the totality of performance.
>
> [T]he delegation of policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the delegee . . . . The governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board.[9]

---

[5] *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).

[6] *McMillian v. Monroe Cty.*, 520 U.S. 781, 784-85 (1997) (quoting *Monell*, 436 U.S. at 694).

[7] *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

[8] *Id.* at 786 (citing *Praprotnik*, 485 U.S. at 123).

[9] *Democracy Coalition v. City of Austin*, 141 S.W.3d 282, 293 (Tex. App. 2004) (citations omitted).

We have applied Texas law in a variety of factual patterns and held that the constables in those cases were not policymakers for their respective counties.

In *Rhode v. Denson*, Rhode sued Constable Denson and San Jacinto County under § 1983 for misconduct in connection with an arrest.[10] Rhode obtained a substantial verdict against Denson and the County.[11] The jury also awarded Rhode punitive damages against Denson individually.[12] We reversed the judgment rendered against the County and found that Constable Denson was not a policymaker for the County.[13] We contrasted the role of constable with that of a sheriff, county treasurer, or county judge, and were "unpersuaded that a constable of a Texas county precinct occupies a relationship to the County such that his edicts or acts may be fairly said to represent official county policy."[14] We concluded that "Denson, as a constable, lacked the power to make county policy."[15]

In *Keenan v. Tejeda*, former deputy constables filed suit against the constable, in his individual capacity, and the County.[16] The deputies resigned after witnessing some unlawful activity in the constable's office and then participated in a highly critical news report about the constable's misconduct.[17] They alleged that following the news report they were unlawfully detained and arrested by the constable and his deputies.[18] Following *Rhode*, we held that

---

[10] 776 F.2d 107, 107-08 (5th Cir. 1985).
[11] *Id.* at 108.
[12] *Id.*
[13] *Id.* at 109-10.
[14] *Id.*
[15] *Id.* at 110.
[16] 290 F.3d 252, 256 (5th Cir. 2002).
[17] *Id.*
[18] *Id.* at 256-57.

the County could not be held liable for the actions of the constable because constables are not policymakers.[19]

Our unpublished opinion in *Tonkin v. Harris County Texas* is directly on point.[20]  Former deputy constables filed a § 1983 suit against the County alleging that the constable violated their First Amendment rights.[21]  The constable threatened to fire the deputies if they aired their grievances about his policies to the commissioners court.[22]  The constable also required the deputies to support his reelection campaign.[23]  When the deputies refused to comply, they were terminated and filed suit.[24]

There, as in this case, the threshold question was whether the constable was a policymaker for the County so that the County could be held liable for the constable's action in terminating the deputies.[25]  Relying primarily on *Rhode*, we concluded that constables have limited authority and are not policymakers.[26]  We concluded that constables are not policymakers for the County even though constables are seemingly independent and lack supervision.[27]  Because the constable was not a policymaker and the plaintiffs sued only the County rather than the constable in his individual capacity, we held that the former deputies' § 1983 claim must fail.[28]

In *Frank v. Harris County*, a former deputy constable filed suit against the County pursuant to § 1983 and Title VII, alleging the constable sexually

---

[19] *Id.* at 262-63.

[20] 257 F. App'x 762, 763 (5th Cir. 2007).

[21] *Id.*; Brief of Appellants at 7-9, *Tonkin v. Harris Cty. Tex.*, 257 F. App'x 762 (5th Cir. 2007) (No. 07-20061), 2007 WL 4982759.

[22] Brief of Appellants at 12, *Tonkin*, 257 F. App'x 762 (No. 07-20061), 2007 WL 4982759.

[23] *Id.*

[24] *Id.*

[25] *Tonkin*, 257 F. App'x at 763.

[26] *Id.* at 763-64 (quoting *Rhode*, 776 F.2d at 110).

[27] *Id.* (quoting *Rhode*, 776 F.2d at 110).

[28] *Id.* at 764.

harassed and then fired her.[29]  The district court granted the County's motion for summary judgment on the § 1983 claim and we affirmed, holding that the constable is not a final policymaker.[30]

Bowden relies on a Texas court of appeals case, *Harris County v. Nagel*, which held that the particular constable in that case was a policymaker for the County for the limited purpose of serving mental-health warrants.[31]

In *Nagel*, the mother of a mentally ill man sought a mental-health warrant to move her son from her home to a hospital to stabilize his medication.[32]  Harris County Precinct 1 deputy constables executed the warrant and the man died in the process.[33]  The survivors of the deceased man brought a § 1983 action against the County and the deputies who executed the mental-health warrant on grounds they used excessive force.[34]  To impose liability on Harris County, the plaintiffs argued, and the court agreed, that the Precinct 1 Constable was a policymaker for the County.[35]

The court emphasized however that the commissioners court delegated to this constable the authority to execute all mental-health warrants in Harris County.[36]  The commissioners court also appropriated funding for this constable to carry out this delegated function.[37]  In light of this broad delegation, the court held that the Precinct 1 Constable was a "final policymaker concerning the manner in which mental-health warrants [were] executed in Harris County."[38]

---

[29] 118 F. App'x 799, 801 (5th Cir. 2004).
[30] *Id.* at 801-02.
[31] 349 S.W.3d 769, 793-94 (Tex. App. 2011).
[32] *Id.* at 773-74.
[33] *Id.* at 774-75.
[34] *Id.* at 775.
[35] *See id.* at 791.
[36] *Id.* at 794.
[37] *Id.* at 794.
[38] *Id.*

No. 16-40311

As demonstrated by the court's limiting language, the Texas court's finding that the Harris County Precinct 1 Constable was a policymaker is limited to that County's constable for the specific purpose covered by the broad delegation of serving mental-health warrants.[39]  The limited holding in *Nagel* is inapplicable here.

Bowden also argues, as she did below, that Saleme testified that he was a "policymaker" for the purposes of hiring and firing deputies.  As the district court correctly concluded, Saleme's use of the word "policymaker" in testimony does not make him a policymaker for the County to impose § 1983 liability.[40]

As the constable of one out of eight precincts in Jefferson County, Saleme may have been a decision maker for a single precinct, but he was not a policymaker for all of Jefferson County when he constructively terminated Bowden.

Because Bowden failed to establish a policymaker or a County policy to support her claim, we need not examine whether there was a "violation of constitutional rights whose 'moving force' is the policy or custom."[41]

IV.

Bowden failed to raise a genuine issue of material fact regarding her § 1983 liability claim against Jefferson County.  Constable Saleme is not a policymaker under Texas law and Bowden failed to assert that the County had a policy or custom that served as the moving force behind the alleged violation of her First and Fourteenth Amendment rights.  The judgment of the district court is AFFIRMED.

---

[39] *See id.* at 791-94.

[40] *Bowden v. Jefferson Cty.; Saleme*, No. 1:14-CV-287, slip op. at 14-15 (E.D. Tex. Nov. 6, 2015) (discussing *Frank*, 118 F. App'x at 802).

[41] *Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694).