# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 22-20627

———————————

United States Court of Appeals
Fifth Circuit

**FILED**
April 15, 2024

Lyle W. Cayce
Clerk

Marcus Anderson; Reed Clark,

*Plaintiffs—Appellants*,

*versus*

Harris County,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-4920

———————————————————————

Before Wiener, Haynes, and Higginson, *Circuit Judges*.

Haynes, *Circuit Judge*:

Plaintiffs Marcus Anderson and Reed Clark appeal the district court's dismissal of their § 1983 claims against Harris County. For the reasons set forth below, we AFFIRM.

## I.    Background

This case involves allegations from current and former Harris County employees that Constable Christopher Diaz violated their First Amendment rights. Plaintiffs allege that, after Diaz was elected as constable of Harris County Precinct Two, he "instituted reforms . . . to ensure that he would

continue to be elected." These reforms included requiring employees to work on the Diaz campaign by (1) securing capital and (2) performing administrative functions such as notifying employees of campaign events. The employees further allege that Diaz retaliated against any employee who impeded campaign functions. For example, Diaz allegedly disciplined every employee "who participated in the Texas Rangers investigation into misappropriated [Hurricane] Harvey donations by the Diaz campaign." Diaz also allegedly "conditioned advancement within Precinct Two upon a quantitative evaluation of that employee's contribution to the Diaz campaign, such that, coveted positions would go to [the] employee who had contributed the most." Plaintiffs assert that Diaz's employees suffered various adverse employment actions ranging from transfer to termination.

As relevant here, Plaintiffs allege Diaz had final authority over employment decisions. A former constable for Precinct Three submitted an affidavit stating that he was a policymaker regarding employment decisions and that neither the Harris County Sherriff's Office nor the Commissioners Court oversaw the creation of those policies.

In December 2019, Plaintiffs initiated this suit against Diaz and Harris County under 42 U.S.C. § 1983, claiming Diaz violated their First Amendment rights. Harris County subsequently filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Finding that Diaz was not a policymaker for Harris County, the district court granted the motion and dismissed with prejudice all claims against the county. At that time, the district court declined to enter a final judgment as to Harris County. However, two years later, when Plaintiffs moved for a final judgment as to Harris County due to Diaz's interlocutory appeal based upon his claim of qualified immunity, the district court issued a final judgment regarding the

claims against Harris County, allowing the Plaintiffs to appeal.[1]  Plaintiffs timely appealed.

## II.　Jurisdiction & Standard of Review

The district court properly exercised jurisdiction over Plaintiffs' § 1983 claims pursuant to 28 U.S.C. § 1331.  We have jurisdiction to review the district court's partial final judgment entered pursuant to Rule 54(b).  28 U.S.C. § 1291.

We review de novo a district court's grant of a motion to dismiss for failure to state a claim, "applying the same standard applied by the district court."  *Masel v. Villarreal*, 924 F.3d 734, 742–43 (5th Cir. 2019), *as revised* (June 6, 2019).  In conducting this review, we "accept as true any well-pleaded factual allegations" but do not "accept as true legal conclusions." *Id.* at 743.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks and citation omitted).

## III.　Discussion

Plaintiffs raise two issues on appeal: (1) whether Diaz is a policymaker regarding employment-related decisions for Harris County and, alternatively, (2) whether Harris County, through its Commissioners Court, delegated policymaking authority or rubber stamped Diaz's employment decisions.

### A. Policymaker

---

[1] The two appeals were not consolidated.  The district court had denied Diaz's claim of qualified immunity, and he lost his interlocutory appeal. *Anderson v. Diaz*, No. 22-20525, 2023 WL 8521395, at *1 (5th Cir. Dec. 8, 2023) (per curiam).  Thus, this appeal addresses only the claims against Harris County.

No. 22-20627

Plaintiffs may bring § 1983 claims against municipalities for violations of their constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). However, "[i]t is well established that a [municipality] is not liable under § 1983 on the theory of respondeat superior." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). Thus, to establish municipal liability, a plaintiff must identify "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694). Here, the district court found that Diaz is not a policymaker because a constable serving a single precinct does not make employment policy for all of Harris County. We agree.

Our precedent makes clear that a constable's employment decisions within his own precinct do not constitute county-wide policy. In *Rhode v. Denson* we were "unpersuaded that a constable of a Texas county precinct occupies a relationship to the County such that his edicts or acts may fairly be said to represent official county policy." 776 F.2d 107, 108 (5th Cir. 1985). Plaintiffs argue that *Rhode* is limited to a constable's role when making arrests. But our subsequent cases apply *Rhode* to constables' employment decisions. *See, e.g.*, *Tonkin v. Harris County*, 257 F. App'x 762, 763 (5th Cir. 2007) (per curiam) (holding that a constable did not act as a policymaker when he allegedly violated the plaintiffs' First Amendment rights by retaliating against them for refusing to support his election campaign); *Bowden v. Jefferson County*, 676 F. App'x 251, 256 (5th Cir. 2017) ("As the constable of one out of eight precincts in Jefferson County, [the constable] may have been a decision maker for a single precinct, but he was not a policymaker for all of Jefferson County when he constructively terminated [the plaintiff]."); *Frank v. Harris County*, 118 F. App'x 799, 802 (5th Cir. 2004) (holding that a constable was not acting as a policymaker for the county when he discharged a deputy).

4

No. 22-20627

Although Plaintiffs have alleged that Diaz had complete control over employment decisions for Precinct Two,[2] they have not alleged or argued that he made employment decisions for the entire county, nor could they. Accordingly, Diaz, as a constable of a single precinct, is not a final policymaker for Harris County.[3]

## B. Delegation or Rubber Stamp

Plaintiffs alternatively argue that Harris County is liable for Diaz's employment decisions under a delegation or rubber-stamp theory. Both theories fail in this case.

First, Plaintiffs improperly rely on *Harris County v. Nagel* for its delegation theory. 349 S.W.3d 769 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). In *Nagel*, the court held that a constable was a policymaker for the county because the Commissioners Court delegated authority to him. *Id.* at 794. But there, the Commissioners Court delegated authority over mental-health warrants *in the entire county* to the constable of a single precinct. *Id.* Plaintiffs here have neither alleged nor argued that Diaz received authority over more than his own precinct. We have previously rejected the extension of *Nagel* to employment decisions for individual precincts, and we do so here. *Bowden*, 676 F. App'x at 256 ("[T]he Texas court's finding that the Harris

---

[2] This ability to make final employment decisions does not equate to the ability to make final policy. *See Bolton v. City of Dallas*, 541 F.3d 545, 549 (5th Cir. 2008) (per curiam) ("[D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function."); *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010) ("The fact that an official's decisions are final is insufficient to demonstrate policymaker status.").

[3] Plaintiffs also argue that, because sheriffs are policymakers, so are constables. But we have repeatedly distinguished sheriffs and constables because a sheriff's authority is county-wide, while a constable has authority over only a single precinct. *See, e.g.*, *Rhode*, 776 F.2d at 109; *Bolton*, 541 F.3d at 550 n.4.

No. 22-20627

County Precinct 1 Constable was a policymaker is limited to that County's constable for the specific purpose covered by the broad delegation of serving mental-health warrants. The limited holding in *Nagel* is inapplicable here." (footnote omitted)). Because Harris County did not delegate authority to hire and fire to Diaz over the *entire* county, Plaintiffs' delegation theory fails.

Second, Plaintiffs assert that Harris County is liable because the Commissioners Court rubber stamped Diaz's decisions by accepting them without question. We have not applied a theory that merely failing to disagree with something a constable did (without any allegation that the Commissioners Court knew the details) allows for a rubber-stamp theory of municipal liability. Rather, we have held a plaintiff may establish municipal liability through a ratification theory. *See Young v. Bd. of Supervisors*, 927 F.3d 898, 903 (5th Cir. 2019) ("If the authorized policymakers approve a subordinate's decision *and the basis for it*, their ratification would be chargeable to the municipality because their decision is final." (emphasis added) (quotation omitted)). There are certainly no pleadings of such action. Thus, we need not even address the rubber-stamp theory here.[4]

More importantly, Plaintiffs have not alleged that the county maintained a policy authorizing constables to condition employment on campaign contributions. Nor have Plaintiffs alleged that the Commissioners

---

[4] Even if we adopted a rubber-stamp theory of liability, Plaintiffs would fail to meet their burden of establishing it. According to their allegations and affidavit, the Commissioners Court had no control over Diaz's employment decisions and no involvement in the employment process. Texas courts have also held that "[o]nly the constable has supervisory authority over the deputy constables; the commissioners court's only authority over the deputies is budgetary." *Nagel*, 349 S.W.3d at 793; *see also Renken v. Harris County*, 808 S.W.2d 222, 226 (Tex. App.—Houston [14th Dist.] 1991, no writ) ("The Commissioners Court does exercise budgetary powers over the positions in the Constable's office. However, it has no authority by virtue of that budgetary power, to appoint or terminate a deputy constable.").

6

Court had any knowledge of Diaz's employment decisions on that basis, let alone alleged that the Commissioners Court approved Diaz's decisions and his unconstitutional basis for them. Under Plaintiffs' alleged facts, Diaz's actions were based on his own policy (that he likely hid from the Commissioners Court)—not the policy of Harris County. Plaintiffs' claims are thus more appropriately directed at Diaz alone. *See Anderson v. Diaz*, No. 22-20525, 2023 WL 8521395, at *1 (5th Cir. Dec. 8, 2023) (per curiam) (affirming district court's denial of qualified immunity to Diaz).

In sum, Plaintiffs have not alleged sufficient facts to plausibly show Harris County adopted a policy that violated their First Amendment rights. Accordingly, Plaintiffs' assertion of municipal liability fails.

## IV.　Conclusion

Because Plaintiffs have failed to show that the alleged First Amendment violations were the result of an official county policy, we AFFIRM the district court's dismissal of their claims against Harris County.